260 N.J. Super. 591 (1992)
617 A.2d 302
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
SHELTON MARSHALL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 28, 1992.
Decided December 14, 1992.
*593 Before Judges KING, BRODY and LANDAU.
Zulima V. Farber, Public Defender, attorney for appellant (Diane Toscano, Assistant Deputy Public Defender, of counsel and on the brief).
Jeffrey S. Blitz, Atlantic County Prosecutor, attorney for respondent (James F. Smith, Assistant County Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by BRODY, J.A.D.
Following a jury trial defendant was convicted of second-degree conspiracy to rob, a violation of N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1. The issue at trial was whether defendant, who was present at the scene of the robbery, participated in it with two other men who committed the crime. Although finding him guilty of conspiracy, the jury acquitted defendant of the robbery and of the lesser included offense of theft from the *594 person. The trial judge imposed a seven-year prison sentence. We reverse the conviction because in his summation the assistant prosecutor improperly argued to the jury that defendant, who did not testify, demonstrated his guilt by failing to report the robbery.
The State's evidence was presented primarily through the victim's testimony. He testified that he was employed as a cook for the same Atlantic City hotel and casino that employed defendant as a security officer. The two men did not know each other, however, until they met on the night of the robbery. The victim finished work that night at 11:15 p.m. and walked toward a bus terminal to take the 12:40 a.m. bus home. Along the way he purchased a six-pack of beer, which he began to drink while seated on a park bench across from the terminal. Defendant happened by and the two struck up a conversation. The victim offered defendant some beer and they spent about an hour talking and drinking. During the conversation, defendant told the victim where he worked, showing him his employee identification badge.
When the beer ran out, the men walked to the tavern where the victim had bought the six-pack. They had another beer at the tavern, which the victim paid for. After they finished drinking at the tavern, the victim bought a twelve-pack of beer and the two returned to the park for more conversation and drinking. While they were "shooting the breeze," defendant asked for some money and the victim gave him eight dollars and change so as "not to be bothered with [him] any more." A while later, two men approached the bench. They talked with defendant out of the victim's hearing for about twenty to thirty minutes while standing eight to ten feet away from the bench. The victim was later unable to give the police any description of the two men and they were never identified.
Defendant's request for money and the presence of the other two men made the victim apprehensive so he decided to leave. He testified that by then he had drunk "about a six pack." As *595 he was leaving, one of the three men, the victim did not know who, grabbed him from behind and knocked him to the ground. One of the three men, the victim did not know who, then removed his wallet from his back pocket. The victim testified that he saw defendant holding the wallet as he and the other two men ran toward Pitney Village, a nearby housing complex. The victim got up and chased them, but as he caught up with defendant at the complex the other two men beat him into unconsciousness. The victim was treated at a hospital and then released.
On redirect examination, the victim added that when he reached the housing complex, he saw defendant take money out of the wallet and count it. When he asked defendant to return the money, defendant said, "[I]f you don't shut up, I'm gonna hit you and that's it."
Defendant and the victim missed work later that day. The hotel and casino's records show that defendant called in sick. Both men returned to work the following day.
During his summation the assistant prosecutor argued:
[Defendant's attorney] talked about  a lot about what makes sense, what doesn't make sense. Well, he conceded to you, in his summation, that [defendant] was there; that [defendant] saw this robbery happen. Doesn't dispute that. [Defendant's attorney] says his client, the Defendant, was not involved. Well, if [defendant] is any kind of a security guard, any kind of friend, when he goes to work the next day, isn't he going to tell somebody in the Security Department what happened? If [the victim] wasn't able to give a description of those two people, [defendant], who spends more time with them, up close and personally chatting with them and talking to him, if you accept [the victim's] testimony as the truth, in Pitney Village, wouldn't he provide the Security Department with some sort of description of those two males, but he didn't do it. He didn't do it....
Although he couched his argument in terms of failing to report the robbery to defendant's employer, realistically the assistant prosecutor was arguing that if he were innocent defendant ultimately would have reported the robbery to the police who were investigating the crime.
Defendant's attorney began to object to the argument at the close of the summation, but the trial judge ruled that he would *596 not hear objections until after he charged the jury.[1] While the jury was deliberating, defendant's attorney moved for a mistrial, arguing that the assistant prosecutor's comment impinged on defendant's right to remain silent. The judge reserved decision. On the day of sentencing he denied the motion for the following reasons, which we quote in full:
The comments made by the Prosecutor in his summation, in the context of the trial, the testimony, the comments of the defense attorney, generally were fair comments and I don't think that there was anything said by the Prosecutor to justify the granting of a new trial or an acquittal, notwithstanding the verdict.
State v. Brown, 118 N.J. 595, 613, 573 A.2d 886 (1990), holds that "evidence of pre-arrest silence, particularly in the absence of official interrogation, does not violate any right of the defendant involving self-incrimination." The Court recognized, however, that the pre-arrest failure of a witness to a crime to report the crime is not substantively relevant to the witness's guilt because it raises inferences that are equally consistent with guilt and with innocence. The witness's pre-arrest silence could mean that he was afraid to report his own involvement because he was guilty, or it could mean that, though innocent, he was afraid to report "his own involvement ... because it had incriminatory potential." Id. at 614, 573 A.2d 886. Thus the question is no longer whether the constitution gives a defendant the right not to report a crime he had witnessed  Brown makes it clear that a defendant does not have that right. Rather, the question is whether the defendant's failure to report the crime is relevant to his guilt.
In answering that question the Court distinguished between whether a defendant's pre-arrest silence is used solely to impeach his credibility, as was done in the Brown trial, or is offered as substantive evidence of his guilt.
*597 The Court held that evidence of a defendant's pre-arrest silence is admissible to affect his credibility if, in the circumstances, such silence may reasonably be considered inconsistent with his testimony:
We conclude, therefore, that evidence regarding pre-arrest silence is admissible if, when viewed objectively and neutrally in light of all circumstances, it generates an inference of consciousness of guilt that bears on the credibility of the defendant when measured against the defendant's apparent exculpatory testimony. [Id. at 615, 573 A.2d 886.]
The Court did not expressly state whether a defendant's pre-arrest silence is admissible as substantive evidence of guilt if the defendant does not testify, the issue now before us. However, the Court made it clear that such evidence is admissible only to impeach the credibility of a defendant who testifies:
We conclude, in sum, that [the defendant's] pre-arrest silence was properly admitted for impeachment purposes and, further, that it was carefully limited only to impeachment. [Here the Court footnoted the trial judge's instruction, which included, "[Y]ou cannot consider this evidence bearing upon [defendant's] guilt or innocence. The State cannot demonstrate his guilt from evidence concerning when he came forward with his account."] Under any version of the facts, the jury could have inferred that [the defendant's] silence was indicative of prevarication when measured against his testimonial version of the fatal accident. Further .. . we do not find that [the defendant's] impeachment confused the jury, or relieved the State of its prosecutorial responsibilities or ultimate burden of proof. [Id. at 616, 573 A.2d 886.]
If evidence of a defendant's pre-arrest silence is not admissible to prove consciousness of guilt when he testifies, a fortiori such evidence is not admissible for that purpose if he does not testify and therefore is not available to explain his silence.
Here there was no dispute over the admissibility of evidence of defendant's pre-arrest silence because the State never offered specific evidence on the subject. In his summation the assistant prosecutor inferred from the general evidence that defendant had not reported the crime and asked the jury to infer defendant's guilt from that pre-arrest silence. Assuming that it was reasonable for the assistant prosecutor to infer defendant's pre-arrest silence from the evidence, we understand Brown to mean that it was improper for the assistant prosecutor *598 to have asked the jury to infer defendant's guilt from that silence. A jury may consider a defendant's pre-arrest silence only to affect his credibility and even then only when the trial judge first rules that defendant's silence may reasonably be viewed as inconsistent with his testimony. Here defendant did not testify so the assistant prosecutor should not have asked the jury to consider his pre-arrest silence for any purpose.
The remaining issue is whether the trial judge's erroneous failure to grant defendant's motion for a mistrial or to give a curative instruction was sufficiently harmful to require a reversal of the conviction. If the error deprived defendant of a federal constitutional right, it may not be considered harmless unless it was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711, reh'g den. 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). As suggested in our previous quotation from Brown, the error may have deprived defendant of his constitutional right to have the State bear the full burden of proving his guilt. The prosecutor's remarks may also have constituted impermissible comment on defendant's related constitutional right not to testify. If the error or omission was not of constitutional dimensions, the test is whether it was "clearly capable of producing an unjust result...." R. 2:10-2.
We are satisfied that there must be a reversal even if the error did not deprive defendant of a constitutional right. The State's case rested primarily on the credibility of the victim's testimony. That credibility was undermined by inconsistencies between his testimony and four prior written statements that he had given about the incident: two to the police, one to his employer and one to an investigator employed by defendant's counsel. Some of the inconsistencies were significant. For instance, in the statement he gave his employer the victim claimed that he was assaulted and robbed by patrons of a fast food restaurant as he was leaving it. In none of the statements did the victim state, as he did at trial, that he had *599 seen defendant counting money from his wallet and had heard defendant tell him to shut up or defendant would hit him.
Other weaknesses in the victim's testimony included the unlikelihood that defendant would have participated openly in the robbery after having fully disclosed his identity to the victim and having told him where he worked. It is also odd that although the victim testified that he saw the two other men talking to defendant a few feet away for twenty to thirty minutes, he could not describe them in any way to the police. It may be that the victim's consumption of alcohol affected the accuracy of his perception. Questions respecting the victim's credibility may explain why the jury acquitted defendant of robbery.
We do not suggest that the State's evidence does not support the verdict. It clearly did. However, we conclude that the jurors understandably might have acquitted defendant of all charges had their deliberations not been influenced by the assistant prosecutor's improper assertion that defendant's pre-arrest silence was evidence of his guilt. That assertion was clearly capable of producing an unjust result.
Our determination renders defendant's other points moot.
Reversed and remanded for retrial.
NOTES
[1] Trial judges should hear promptly objections to remarks made during summation so as not to lose the opportunity to give an effective curative instruction if one is warranted.