290 N.J. Super. 302 (1996)
675 A.2d 1125
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BLAINE HOLMES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 7, 1996.
Decided April 15, 1996.
*306 Before Judges LONG, MUIR, Jr. and BROCHIN.
Susan L. Reisner, Public Defender, attorney for appellant (Edward P. Hannigan, Assistant Deputy Public Defender, of counsel and on the brief).
Deborah T. Poritz, Attorney General, attorney for respondent (Arthur S. Safir, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by LONG, P.J.A.D.
Tried to a jury, defendant, Blaine Holmes, was convicted of the murder of Jerome Alford, a/k/a/ Fuquan, contrary to N.J.S.A. 2C:11-3a(1), (2) (count one); fourth degree unlawful possession of a knife, contrary to N.J.S.A. 2C:39-5d (count two); and third degree possession of said knife for an unlawful purpose, contrary to N.J.S.A. 2C:39-4d (count three). After merging the conviction on count three into the conviction on count one for sentencing, the trial judge sentenced defendant to life in prison with thirty years of parole ineligibility on count one, and to a concurrent custodial term of eighteen months on count two. Appropriate monetary penalties were also imposed.
Defendant appeals, contending that the following errors warrant reversal:

*307 POINT I:

DEFENSE COUNSEL'S FAILURE TO IMPEACH THE CREDIBILITY OF THE TWO PRINCIPAL WITNESSES AGAINST DEFENDANT, ROBERT AND SHARON DENIKE, ON THE GROUND THAT BOTH HAD PRIOR CRIMINAL RECORDS, AND, IN RALPH DENIKE'S CASE, WAS ON LIFETIME PAROLE, AND, IN SHARON DENIKE'S CASE, WAS ON PROBATION FOR INDICTABLE CRIMES, BOTH AT THE TIME THEY MADE THEIR ORIGINAL STATEMENTS TO THE POLICE AND AT THE TIME THEY TESTIFIED AT TRIAL, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL, ALTHOUGH THE OMISSION IS ALSO ATTRIBUTABLE TO THE FAILURE OF THE PROSECUTION TO AFFORD DEFENSE COUNSEL A LIST OF THE RECORDS OF CRIMINAL CONVICTIONS OF THE WITNESSES IT CALLED TO TESTIFY AGAINST DEFENDANT. WHETHER, HOWEVER, THE OMISSION IS ASCRIBABLE PRIMARILY TO DEFENSE COUNSEL'S INCOMPETENCE OR THE STATE'S FAILURE TO PROVIDE THE DISCOVERY MATERIALS REQUIRED OF IT BY RULE, ITS EFFECT IN EITHER EVENT WAS TO DEPRIVE DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO ADEQUATE REPRESENTATION OF COUNSEL, OF HIS RIGHT TO MEANINGFULLY CONFRONT THE WITNESSES AGAINST HIM, AND OF HIS RIGHT TO DUE PROCESS OF LAW. (Not Raised Below).
Introduction
The Centrality of the Denikes' Testimony.
The Prejudicial Effect of the Failure to Apprise the Jury of the Denikes' Prior Conviction of Indictable Crimes, as Well as the Vulnerable Status They Occupied Both at the Time They Made Their Statements to the Police and When They Testified at Trial. Whether Primarily Attributable to Defense Counsel's Incompetence or to the Prosecutor's Willful Neglect in Providing Defense Counsel With Information Concerning Such Prior Convictions and Vulnerable Status, Requires Reversal of Defendant's Convictions.
Robert Denike's Record.
Sharon Denike's Record.
The Question of Reversible Error.
POINT II:
IN VIEW OF THE FACT THAT THE DEFENDANT'S STATEMENT TO THE POLICE AND HIS TESTIMONY AT TRIAL UNEQUIVOCALLY CLAIMED THAT HE WAS NOT ONLY PROTECTING HIS PERSONAL SAFETY IN RESISTING FUQUAN, BUT WAS RESISTING AN ATTEMPTED ARMED ROBBERY BY THE LATTER AS WELL, HIS COUNSEL'S FAILURE TO REQUEST A CHARGE RAISING HIS DEFENSE AS WELL AS SELF-DEFENSE CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND THE TRIAL JUDGE'S FAILURE TO ISSUE THE INSTRUCTION PLAIN ERROR. THIS FAILURE WAS PARTICULARLY DAMAGING IN THAT DEFENDANT WAS NOT, UNDER THE CIRCUMSTANCES, OBLIGED TO RETREAT, AS THE JURY WAS INSTRUCTED HE MUST, *308 BUT COULD LEGALLY HAVE STOOD HIS GROUND AND RESISTED THE ATTEMPTED ROBBERY. (Not Raised Below).
POINT III:
DEFENSE COUNSEL'S FAILURE TO OBJECT TO THE PROSECUTOR'S QUESTIONING OF DEFENDANT CONCERNING HIS POST-ARREST SILENCE (IN THAT DEFENDANT DID NOT INFORM THE POLICE THAT THE HOMICIDE WAS JUSTIFIED) AS WELL AS, EVEN SHOULD THE TRIAL JUDGE HAVE FOUND SUCH TESTIMONY ADMISSIBLE, HIS FAILURE TO REQUEST AN INSTRUCTION AS TO THE LIMITED EFFECT OF SUCH TESTIMONY, CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND REQUIRES REVERSAL. (Not Raised Below).
In a supplemental pro se brief, defendant contends that:
POINT I:
THE TRIAL COURT ERRED IN GIVING A "FLIGHT" INSTRUCTION.
POINT II:
DEFENDANT'S MURDER CONVICTION WAS A MISCARRIAGE OF JUSTICE BECAUSE OF A FAULTY AND CONFUSING INSTRUCTION ON PASSION/PROVOCATION MANSLAUGHTER.
POINT III:
DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.
We have carefully reviewed this record in light of these contentions and have concluded that defendant did not receive a fair trial as a result of his counsel's failure to impeach the two principal witnesses against him and to intervene when the prosecutor raised the issue of defendant's pre-arrest silence before the jury. Thus, we reverse and remand the case for a new trial.

I
For the purposes of this opinion, it is unnecessary to detail every aspect of the trial testimony except to say that Robert and Sharon Denike, who were at the location of the crime for the purpose of obtaining drugs, were the only eye witnesses to the whole encounter between defendant and the victim. They testified essentially that the defendant and the victim fought over money the victim owed the defendant; that defendant was the aggressor in the fight; and that the victim was backing up while *309 defendant was punching into him with a knife. Both fell down the basement steps.[1]
On the contrary, defendant who testified on his own behalf stated that he owed the victim money; that the victim demanded the money and tried to go into defendant's pockets. According to defendant, a fight ensued during which the victim pulled a knife and tried to stab him over the money. They fought for the knife. Somehow defendant was able to retrieve the knife and stab the victim during the tussle.[2]
In essence, the stories told by the Denikes and defendant were polar opposites in the critical details. They could not be reconciled. According to the Denikes, defendant had a motive to kill the victim and was the aggressor during the stabbing. According to defendant, he was the victim of an enraged aggressor and he fought back to save himself during a robbery. Depending on which version the jury believed, defendant's actions could be characterized as cold blooded murder, justifiable homicide or a mitigated offense in between. The outcome hinged on the believability of the Denikes and defendant.
When defendant testified, his long prior record, including drug offenses and robberies, was made known to the jury for use as part of their credibility assessment. However, when the Denikes testified, a fleeting statement by Robert Denike as to being on parole, and Sharon Denike's admission that she stopped using drugs in jail were the sole references to their prior records.
What were those prior records? In 1990, in an unpublished opinion affirming Robert Denike's conviction, we noted:
In 1973, defendant was tried by a jury and was found guilty of kidnapping (N.J.S.A. 2A:118-1), rape (N.J.S.A. 2A:90-3), assault with an offensive weapon (N.J.S.A. 2A:90-3), threatening to take a life (N.J.S.A. 2A:113-8), lewdness *310 (N.J.S.A. 2A:115-1), possession of an offensive weapon (N.J.S.A. 2A:151-41(c), and possession of an offensive weapon with the intent to use it unlawfully (N.J.S.A. 2A:151-56). On the kidnapping conviction, defendant was sentenced to life imprisonment. A consecutive sentence of seven to ten years was imposed on the conviction for possession of an offensive weapon with the intent to use it unlawfully. Defendant received concurrent sentences on the remaining counts. The aggregate sentence thus imposed was life imprisonment plus ten years.
[State v. Denike, Docket No. A-4167-87T2.]
Recognizing that Robert Denike qualified for persistent offender status, we also pointed out that his record prior to the convictions he was appealing "can fairly be described as horrendous." At the time of the crime, Sharon Denike was on probation for a conviction for an indictable offense and was under indictment for six other indictable offenses. Both Denikes, having acknowledged that they were involved in a drug transaction on the night in question, were subject to the revocation of their respective parole and probationary terms. Sharon Denike also had six other charges hanging over her head, including conspiracy, burglary and theft.
Although the suggestion that the state failed to provide evidence of these records to the defense has dogged this case, we are satisfied from the certification of the assistant prosecutor, which was not controverted, that the Denikes' prior records were supplied to the defense. We thus address this case from the perspective of the effectiveness of defense counsel.
Counsel's performance must be analyzed under the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987). Accord State v. Paige, 256 N.J. Super. 362, 376-77, 607 A.2d 164 (App.Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992). Under the Strickland test, the key inquiry is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, supra, at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692-93. Strickland sets forth a two-part test to determine whether counsel's performance has been deficient:

*311 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.
[Id. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.]
Under the first prong of the Strickland test, to be deficient, counsel's performance must fall "below an objective standard of reasonableness." Id. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Client loyalty, adequate consultation and legal proficiency are all relevant considerations in assessing counsel's performance. State v. Fritz, 105 N.J. at 52, 519 A.2d 336. Strickland urges great deference in the evaluation of counsel's conduct, requiring "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, supra, at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.
The second prong of the Strickland test requires a showing of actual prejudice. Prejudice to the defendant must be proved, normally it may not be presumed. Id. at 692-93, 104 S.Ct. at 2067, 80 L.Ed.2d at 696-97.
An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.
[Id. at 691-92, 104 S.Ct. at 2066-67, 80 L.Ed.2d at 696 (citation omitted).]
Moreover, the Supreme Court, in recently revisiting the Strickland test in Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), held that, to establish prejudice, a defendant must show not only that the outcome of his trial would have been different absent the alleged deficient representation, but also that the deficient representation rendered the result of his proceeding fundamentally unfair or unreliable. Lockhart, supra, at 372, 113 S.Ct. at 844, 122 L.Ed.2d at 189. See, e.g., *312 United States v. Lively, 817 F. Supp. 453, 458-59 (D.Del.), order affirmed 14 F.3d 50 (3d Cir. Del. 1993). To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant defendant a windfall to which the law does not entitle him. Lockhart, supra, at 373, 113 S.Ct. at 844, 122 L.Ed.2d at 189. The burden to prove that incompetence of counsel had a prejudicial effect upon the outcome of the proceeding is squarely on the defendant. State v. Paige, 256 N.J. Super. at 377, 607 A.2d 164.
Applying these principles, we are satisfied that defendant is entitled to a new trial. We begin our analysis by reiterating that this case was a pitched credibility battle between defendant and the Denikes. The outcome of the case depended on who the jury believed. Thus, anything which could have tipped the credibility scale had the potential to affect the outcome and, to the extent that the credibility scale was wrongly tipped, a fundamental injustice was the result.
We think defense counsel's performance was deficient. In the face of his client's own record being paraded before the jury as a way of attacking his credibility, counsel's failure to do the same to the Denikes is incomprehensible. As one commentator has put it:
The cross-examination of government witnesses regarding prior convictions is extraordinarily dear to defense counsel. For the same reasons that defense counsel ought to fight so strongly to keep a jury from learning of a defendant's prior conviction, every effort must be made to make a jury aware of government witnesses' prior conviction. The goal of course is to transform the government witness into the same piece of meat into which the government tries to turn defendants with records.
[Vol. 1B Criminal Defense Techniques § 26.08[e][a], (Zeppetello, Latner, Kwalbrun, Editors, (1994).]
Even more egregious was defense counsel's failure to delve into the fact that the Denikes had the potential loss of parole and probationary status hanging over their heads and in addition, that Sharon Denike had six other indictables facing her. It is fundamental that defendant has a right to explore, with a prosecution witness, evidence that the State has a "hold" of some kind over the witness, the mere existence of which possesses the potential of prompting him to color his testimony in favor of the prosecution:

*313 Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony. The "common law of evidence" allowed the showing of bias by extrinsic evidence, while requiring the cross-examiner to "take the answer of the witness" with respect to less favored forms of impeachment.
[United States v. Abel, 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984).]
There may exist no express agreement at all that the witness will benefit from testifying favorably for the State, or, alternatively, that the witness will suffer because of failing to do so. All that matters is that the witness subjectively regards himself as vulnerable to government pressure. Thus, in United States v. Leonard, 494 F.2d 955 (D.C. Cir.1974), the court held it error for the trial judge to limit the cross-examination of a prosecution witness concerning unrelated charges which were pending against him:
The permissible scope of exploration on cross-examination is not curtailed by the absence of explicit government promises of leniency, for the defense may attempt to show government "conduct which might have led a witness to believe that his prospects for lenient treatment by the government depended on the degree of his cooperation."
[Id. at 963 (quoting United States v. Campbell, 426 F.2d 547, 549 (2d Cir.1970)).]
The law in New Jersey concerning the constitutional right of the defendant to explore potential bias on the part of a prosecution witness is even broader than that which exists in federal courts:
Contrary to the trial judge's assertion, it is not necessary to show that there existed a prior arrangement between the prosecutor and the witness whereby the latter was to receive immunity from criminal prosecution, before his "`expectations for favorable treatment' may be shown as evidence of bias."
[State v. Mazur, 158 N.J. Super. 89, 94, 385 A.2d 878 (App.Div.) certif. denied, 78 N.J. 399, 396 A.2d 586 (1978).]
The test of propriety of questions addressed to credibility is not necessarily whether there was an arrangement to grant the witness concessions. It is as relevant and significant for a defendant to demonstrate the state of mind of the witness based on his subjective reactions to the favorable treatment he may have received or may hope to receive in connection with his own criminal involvement.
[Id. at 94, 385 A.2d 878 (quoting State v. Vaccaro, 142 N.J. Super. 167, 176, 361 A.2d 47 (App.Div.), certif. den. 71 N.J. 518, 366 A.2d 674 (1976)). (emphasis added).]
*314 Both Robert and Sharon Denike had criminal records. In addition, the former was on lifetime parole, and the latter on probation after convictions for indictable offenses imposed at different times, both when they made their statements to the police and when they testified at trial. The failure of defense counsel to impeach the credibility of the State's principal witnesses by reason of their prior criminality as well as by reason of their hopes and fears as a result of their vulnerable status, is impossible to square with the concept of effective representation. Under no possible scenario could this be viewed as within the range of legitimate decisions as to how best to represent a criminal defendant. The strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance has been overcome on these facts. Strickland, supra, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The failure of defendant's counsel to launch an attack on the Denikes based upon their convictions and expectations in light of a similar attack advanced against defendant, so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Id. at 689, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.
This is not to suggest that every single time a defense counsel fails to probe a state witness's prior record or pending charges, a new trial is an inevitability. We hold only that where, as here, the key to a case is a jury credibility evaluation of the State's witnesses versus the defendant, and where defendant has been subjected to a credibility attack based upon his prior record, the failure of his counsel to advance the same kind of an attack on the State's witnesses when such an attack is richly merited, warrants retrial.

II
We are satisfied as well that defense counsel's failure to object to the prosecutor's questioning of defendant as to his pre-arrest silence and to request an instruction as to the limited effect of *315 such testimony constituted ineffective assistance of counsel under the standards we have outlined above.
During the course of cross-examination, the prosecutor and the defendant engaged in the following exchange:
Q. Jerome Alford pulled a knife on you; is that correct?
A. Yes.
Q. Okay. When you came out of the basement did you call the police?
A. No, I didn't.
Q. Did you report to any law enforcement or personnel that, gee, I was in the basement and we were struggling. I came out with blood and maybe the person died. Did you tell anyone that?
A. The only people that I told was on the streets.
Q. Did  but did you tell anyone in law enforcement?
A. No law enforcement.
Q. You didn't tell any law enforcement that night; right?
A. Right.
Q. You didn't tell anyone the next day?
A. Right.
Q. Right?
A. Right.
Q. You didn't tell anyone until you were brought into the Prosecutor's Office?
A. Yes.
Q. Why was that?
A. I really didn't know what to do afterwards because that Monday I had to go to a parole hearing and I had went to the parole hearing and they had a violation for not appearing and that's how I got locked up.
Q. Did you  who is your probation officer?
A. Parole Officer.
Q. Parole Officer. Did you tell your parole officer that story? I mean the facts that you just told us that someone 
A.  No 
Q.  Drew a knife on you?
A. No.
During his summation, the prosecutor reminded the jury of defendant's failure to notify the authorities of what occurred by linking such failure to his "flight" from the scene.
I think there is no dispute that [defendant] did in fact go to that address on Broad Street attempting to get away. If you have a fight with a person and you think its self defense, why are you trying to leave? You can call law enforcement in, *316 emergency personnel and you say look, I was in a fight with a person. I stabbed him in self defense. Come see if you can save him. That's the time to do it and the judge will instruct you upon flight and how you can consider flight in your deliberations.
In State v. Brown, 118 N.J. 595, 573 A.2d 886 (1990), the Court considered the circumstances under which a defendant's pre-arrest silence may be used to impeach his credibility as a witness. It concluded that:
"[E]vidence regarding a pre-arrest silence is admissible if, when viewed objectively and neutrally in the light of all the circumstances, it generates an inference of consciousness of guilt that bears on the credibility of the defendant when measured against the defendant's apparently exculpatory testimony."
[Id. at 615, 573 A.2d 886.]
Although a defendant is under no duty to speak prior to his arrest, if "a reasonable person" situated as was the defendant would "naturally" have come forward and told the authorities of his "involvement in the criminal episode," then "the failure to have done so has sufficient probative worth bearing on defendant's credibility for purposes of impeachment." 118 N.J. at 613-14, 573 A.2d 886. A defendant's silence is never substantive evidence of his guilt, but is admissible only to cast doubt upon the credibility of his exculpatory testimony at trial. It is consequently inadmissible if the defendant does not take the stand. State v. Marshall, 260 N.J. Super. 591, 597, 617 A.2d 302 (App.Div. 1992).
It follows that the prosecutor's examination of defendant concerning his failure to report his role in the killing of Fuquan should have been objected to, and a determination made out of the presence of the jury whether a reasonable person in defendant's circumstances would have summoned the police and informed them that he had killed Fuquan while resisting a robbery attempt. State v. Brown, 118 N.J. at 613, 573 A.2d 886. Defendant's explanation of Fuquan's death as inextricably intertwined with their drug dealings, could well have been a basis for barring testimony as to his pre-arrest silence because he was already in violation of his parole when Fuquan was killed, making his arrest should he report the incident inevitable, and the ultimate revocation of his parole a certainty. Cf. State v. Merola, 214 *317 N.J. Super. 108, 518 A.2d 518 (App.Div. 1986), certif. denied, 107 N.J. 91, 526 A.2d 168 (1987) (defendant's reporting of criminal incident would have resulted in violation of his probation). Although within minutes of the event, defendant told many neighbors that he was responsible for Fuquan's death, we would ordinarily not expect a parole violator so subject to arrest on independent grounds, to inform the police that he had, however justifiably, killed someone in the aftermath of an illegal narcotics transaction. See State v. Merola, supra.
Even if testimony concerning defendant's pre-arrest silence had been held admissible, defendant would have been entitled to an instruction by the trial judge limiting its application to his credibility, not, as the jury necessarily assumed, as substantive evidence of his guilt. State v. Brown, 118 N.J. at 616, 573 A.2d 886. "A jury may consider a defendant's pre-arrest silence only to affect his credibility and even then only when the trial judge first rules that defendant's silence may reasonably be viewed as inconsistent with his testimony." State v. Marshall, 260 N.J. Super. at 598, 617 A.2d 302.
Because this highly damaging evidence was not objected to, the trial judge issued no instruction to the jury which would have limited its prejudicial impact to defendant's credibility rather than serving as substantive evidence of defendant's guilt. These errors on counsel's part constituted ineffective assistance of counsel. Combined with the deficiencies we have previously noted they require that we reverse defendant's conviction and remand the case for a new trial at which the principles to which we have adverted are put into practice.
Reversed and remanded.
NOTES
[1] Joanne Dunham, who arrived at the scene just before defendant and the victim fell down the basement steps said she saw defendant "shank" the victim who had nothing in his hands.
[2] The victim sustained 12 stab wounds to various parts of his body.