**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1236-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TARI D. TURPIN, a/k/a
TARID TURPIN, TARI TURRIN,
and TARI DEMOND TURPIN,

     Defendant-Appellant.

_____

> Submitted January 27, 2020 – Decided July 6, 2020
>
> Before Judges Sumners and Geiger.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 14-05-0885.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (David J. Reich, Designated Counsel, on the brief).
>
> Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

In the early morning hours of August 25, 2013, defendant was a passenger on a Port Authority Trans-Hudson (PATH) train when he got into a verbal argument with two other passengers, D.D.[1] and A.M., and then shot them with a handgun loaded with hollow point bullets.

In June 2015, a jury found defendant guilty of two counts of aggravated assault, possession of a gun for an improper purpose, possession of a gun without a permit, making terroristic threats, possession of hollow point bullets, and creating a risk of widespread injury or damage. Defendant was later sentenced to a twenty-year prison term, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, for the aggravated assault of D.D., and a consecutive ten-year prison term, subject to NERA, for the aggravated assault of A.M. Defendant's conviction and sentences were affirmed on direct appeal. State v. Turpin, No. A-1745-15T2 (App. Div. June 8, 2017), certif. denied, 231 N.J. 539 (2017).

On January 8, 2018, a self-represented defendant filed a petition for PCR[2] claiming his trial counsel was ineffective for failing to: (1) appropriately advise

---

[1] We use the victims' initials to protect their privacy.

[2] As noted infra, defendant's petition was later supplemented by assigned PCR counsel.

him to testify in his own defense; (2) impeach D.D. with her most recent conviction; (3) review discovery with him; (4) defend against the charge of assault of A.M.; (5) investigate D.D.; and (6) interview witnesses. On September 17, the PCR judge, who did not preside over defendant's trial, issued an order and twelve-page written decision dismissing the petition without an evidentiary hearing. In denying relief, the judge determined defendant failed to establish a prima facie case of ineffective assistance of counsel under the two-prong test of Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) and State v. Fritz, 105 N.J. 42, 58 (1987), that the performance of trial counsel was deficient and that, but for the deficient performance, the result would have been different at trial.

Before us, defendant contends:

> POINT I
>
> THE PCR COURT ERRED IN NOT GRANTING [DEFENDANT] AN EVIDENTIARY HEARING REGARDING HIS CLAIM HIS COUNSEL WAS INEFFECTIVE IN ADVISING HIM NOT TO TESTIFY.
>
> POINT II
>
> THE PCR COURT ERRED IN NOT GRANTING [DEFENDANT] AN EVIDENTIARY HEARING REGARDING HIS CLAIM HIS COUNSEL WAS INEFFECTIVE IN NOT IMPEACHING A KEY

WITNESS AGAINST HIM WITH HER RECENT CONVICTION FOR THIRD-DEGREE AGGRAVATED ASSAULT.

POINT III

DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO TAILOR HIS SUMMATION TO THE JURY CHARGE KNOWN TO BE FORTHCOMING AND IN FAILING TO REQUEST A SEPARATE JURY CHARGE CONCERNING CAUSATION.

Considering these arguments in light of the record and applicable legal standards, we affirm the PCR judge's decision as to Points I and II for the reasons set forth in his written decision. However, as to Point III, although raised for the first time in this appeal, we conclude defendant established a prima facie claim and remand for an evidentiary hearing to avoid an unjust result as to the aggravated assault of A.M. The hearing shall address why counsel did not argue in summation that defendant's conduct of bringing a loaded handgun onto a PATH train was not reckless and why counsel failed to request a jury charge regarding causation.

I.

Because the PCR judge did not conduct an evidentiary hearing on defendant's petition, we may review de novo the factual inferences the court has

4

drawn from the record.  State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014).

The shooting is summarized as follows:

At about 4:30 a.m., while riding the PATH train from New York to Jersey City, defendant and his female companion got into an argument with another passenger, D.D.  During the argument, defendant pulled out a gun [out of his pants (shorts) pocket], and then returned it to his pocket.  He then began to pull the gun back out of his pocket, and D.D.'s friend, A.M, intervened.  According to A.M., he put his left hand over the pocket containing the gun, and put his right hand on defendant's wrist in an effort to keep him from pulling out the gun.  Defendant  fired the gun, shooting off three fingers of A.M.'s left hand but also wounding himself in the leg.  By this time the train had reached Jersey City, and defendant exited the train, still holding the gun.  He paused, turned, and fired two shots at D.D., hitting her once in the leg and shattering her ankle.

Defendant fled through the PATH station, discarding the gun on a ledge, where it was later recovered by the police.   Shortly  after  the  incident,  the  police apprehended defendant a few blocks from the PATH station.  The shooting set off a panic inside the PATH station  and  resulted  in  a  shutdown  of  PATH  train service.

Virtually  the  entire  incident,  including  defendant committing the shootings and discarding the gun, was captured by the PATH system's security video cameras.  The  videos  were  played  for  the  jury.   The State also presented  testimony  from  the  individual  from  whom defendant obtained the gun, a Glock 9 model loaded with hollow point bullets.

5

[Turpin, slip op. at 3-4 (footnote omitted) (internal citation omitted).]

## II.

We address defendant's claims in the order presented to us.

### A.
### Counsel's Advice to Defendant Not to Testify

In his PCR petition, defendant contended his decision not to testify at trial was due to trial counsel's ineffective assistance in advising him not to testify. After considering the trial record and the parties' arguments, the PCR judge determined the contention was without merit. We agree.

After the State rested and outside the jury's presence, defense counsel notified the court defendant was the only defense witness and asked the court to voir dire him regarding his decision to testify. Counsel stated:

> I've advised [defendant] so there's no miscommunications that if he testifies[,] he will be subject to cross-examination, one, with regard to his three prior felony convictions which include, I want to say, burglaries or thefts in or about 1999. They will be sanitized. And he has a gun conviction in 2005 out of [the] State of New York. He received a three with a one. That the State would be able to ask him [to] say the degree of the crime and the sentence he received.
>
> . . . .

6

Also, I've advised him that he runs the risk and the State will, if they want, impeach him with his statement. Even though the [c]ourt has suppressed his statement to [police] . . . if he testifies[,] he could be impeached with that.

So, at this time, it's [defendant's] decision.

The following colloquy ensued:

THE COURT: Okay, . . . what you want to do? You want to be a witness or not?

[DEFENDANT]: Yes.

THE COURT: You want to testify? Okay. . . . I didn't hear.

[DEFENDANT]: Yes.

THE COURT: All right. And as [your counsel] explained to you, I suppressed [the] statement you made to the police based upon the law. But if you say something that's contradictory to what was said in the statement they have the right to impeach you . . . or present it to you and then . . . show the jury you said something different at a different time. That's what impeach means. You understand that?

[DEFENDANT]: Yes.

THE COURT: And you also understand that your prior convictions, they'll all be . . . sanitized. The jury will be made aware of your prior convictions, the date of the offense, and the sentence you received and the degree of the crime. You understand that?

[DEFENDANT]: Yes.

7

THE COURT: Okay. All right.

Immediately after the colloquy, counsel's request for a five-minute break was granted by the court. When the proceedings resumed, counsel stated defendant had changed his mind about testifying. The court then engaged defendant as follows:

> THE COURT: Okay. . . . [I]t's your decision you do not want to testify?
>
> [DEFENDANT]: Yes.
>
> THE COURT: That's your decision? . . . [O]f course you've consulted with [trial counsel]. He's done a wonderful job representing you. But it's your decision not his, you understand that?
>
> [DEFENDANT]: Yes.
>
> THE COURT: And . . . you don't want to testify. You're sure?
>
> [DEFENDANT]: Yes.
>
> THE COURT: Okay.

To offset his representations to the trial court, defendant's affidavit in support of PCR provides:

> I wanted to testify at trial to explain to the jury how I was not the aggressor, yet it [was A.M.] who attacked me. We were surrounded by a large group of intoxicated individuals on the PATH train that night.

> The actions that I took were justified to defend myself, [my female companion], and her two children. I explained this [to] my trial attorney, yet he advised against me taking the stand despite my insistence that I need to tell the jury what really happened that night from my perspective.

With this record in mind, the PCR judge found counsel was not ineffective in advising defendant regarding the ramifications of testifying. The judge reasoned:

> The record is clearly indicative of two things: first, that defendant unequivocally decided to not take the stand when pressed, resolutely stood by his position. Second, this decision was a strategic one, made easier by the risk of impeachment of defendant with his extensive array of prior indelible offenses convictions and involvements with the criminal justice system. Considering this argument under the Strickland lens, defendant's argument must fail because a strategic decision agreed-to and affirmed-by a defendant on-the-record of his choice in not taking the stand does not overcome the strong presumption that counsel's conduct fell outside the "wide range of professionally competent assistance[.]" 466 U.S. at 690; see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 3-22-2(a) (2019).

The PCR judge explained that because defendant could not satisfy the first prong of Strickland, analysis of the second prong was not necessary.

We discern no basis to disturb the PCR judge's ruling on this issue. Our examination of defendant's claim and review of the record convinces us

9

defendant has not established by a preponderance of evidence a prima facie case of ineffective assistance of trial counsel when he chose not to testify at his trial and, thus, there was no need for an evidentiary hearing. See State v. Nash, 212 N.J. 518, 526 (2013) (holding defendant has the burden to establish his or her right to PCR "by a preponderance of the credible evidence") (quoting State v. Preciose, 129 N.J. 451, 459 (1992)); Preciose, 129 N.J. at 462 (ruling a court reviewing a PCR petition based on claims of ineffective assistance of counsel has the discretion to grant an evidentiary hearing if a defendant establishes a prima facie showing in support of the requested relief); see also State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (holding the mere raising of a claim for PCR does not entitle a defendant to an evidentiary hearing). There were no disputed issues of material facts regarding defendant's decision to exercise his right not to testify that prevented the PCR judge from resolving defendant's claim. See State v. Porter, 216 N.J. 343, 354 (2013).

Defendant contends counsel gave him "extremely poor advice," and counsel's quick, last minute consultation with him was insufficient to adequately fulfill the minimal professional norms under our Rules of Professional Conduct. RPC 1.2(a) requires that "[i]n a criminal case, the lawyer shall consult with his client and, following consultation, shall abide by the client's decision on . . .

whether to testify."  RPC 1.4(c) requires "[a] lawyer shall explain a matter to the extent reasonably necessary to make informed decisions . . . ."  Yet, defendant failed to present any competent evidence, such as a certification, that these RPCs were violated.

There was no indication counsel did not properly consult defendant, thereby rendering defendant's allegations as nothing more than "bald assertions," and falling short of establishing a prima facie claim of ineffective assistance.  See Cummings, 321 N.J. Super. at 154.  It is evident from the trial record that defendant's decision not to testify was ultimately his choice.  The mere fact defendant chose not to testify and was found guilty is not a reflection that counsel's advice regarding the potential consequences of testifying constituted ineffective assistance.

We add further that even assuming counsel was ineffective in his advice to defendant regarding defendant's decision not to testify, there is no basis to conclude defendant was prejudiced under Strickland's second prong due to counsel's advice.  Defendant's credibility would have been significantly questioned due to his criminal record, and there is no plausible basis to conclude his testimony would have altered the jury's verdict.

## Counsel's Failure to Impeach D.D.

Defendant's PCR petition contended trial counsel was ineffective for not seeking to impeach D.D.'s credibility by presenting evidence she was convicted of a third-degree aggravated assault just two weeks prior to the trial. Again, the PCR judge examined the trial record and determined the contention was without merit. We agree.

In the midst of the argument with D.D., defendant pulled out a gun, and then returned it to his pocket. D.D. testified that after she attempted to deescalate the argument with defendant "[m]y friend [A.M.] he comes out of nowhere. Like, I didn't see which direction he comes from. And he swings at . . . defendant . . . and its instant[ly], like physical altercation. So, instant fight. And we hear a shot go off." The bullet shot off three of A.M.'s fingers and entered defendant's own leg. Surveillance video of the incident shows by this time the train had reached its Jersey City stop, and after a protracted struggle over the weapon with A.M., defendant exited the train, still holding the Glock 9. Defendant paused, turned, and fired two shots at D.D., hitting her once in the leg and shattering her ankle.

During D.D.'s direct examination, the State preemptively disclosed she was on probation at the time of the incident due to her conviction of a fourth-

degree crime but had successfully completed her probation before trial. On cross-examination, trial counsel attempted to impeach D.D.'s credibility by pointing out the conviction was for "recklessly using a weapon, specifically, a knife, to commit an aggravated assault." However, counsel did not have D.D. reveal to the jury that two weeks prior to trial, she was convicted of third-degree aggravated assault.

The PCR judge rejected defendant's claim that counsel was ineffective for not bringing up D.D.'s two-week old conviction because defendant was not prejudiced. The judge reasoned:

> [Defendant] fails to more strenuously consider the other evidence at trial . . . [D.D.'s] testimony as well as the PATH security video recording that captured "virtually the entire incident, including defendant committing the shooting and discarding the gun." (Turpin, slip op. at 2). Accordingly, not only is the [c]ourt unmoved that trial counsel's decision not to further impeach [D.D.] was based solely on a failure to investigate that [S]tate's witnesses record, but that further impeachment would not have had a modicum of effect in light of the other evidence presented to the jury.

Defendant reiterates his argument that trial counsel's failure to impeach D.D. using her most recent conviction of aggravated assault was ineffective assistance of counsel. He argues the conviction was for a higher degree and there was no reason for trial counsel not to confront D.D. about it, unless he was

13

not aware of it. He asserts D.D. depicted herself as a reformed person; having completed her probation and attending college to study criminal justice. That portrayal and being a shooting victim, according to defendant, enhanced her credibility before the jury, which could have been materially negated if the jury was aware of her most recent and more serious criminal offense. Defendant posits this would have shown that D.D. and A.M. were the initial aggressors, establishing his right to defend himself and the shooting of A.M. was an accident. We are unpersuaded.

Generally, a criminal defense counsel should impeach an adversarial witness's credibility based upon the witness's criminal convictions, especially where, as here, the witness was convicted of a third-degree offense a mere two weeks prior to her testimony. However, defendant's reliance on State v. Holmes, 290 N.J. Super. 302, 313 (App. Div. 1996) to support his assertion that trial counsel was ineffective for not seeking to impeach D.D. on her most recent conviction is unavailing.

We take no umbrage with defendant's citation to Holmes, where we noted "[t]he cross-examination of government witnesses regarding prior convictions is extraordinarily dear to defense counsel. . . . [E]very effort must be made to make a jury aware of government witnesses' prior conviction." Id. at 312. We

14                                                                              A-1236-18T3

also do not disagree with our further comment in <u>Holmes</u>, cited by defendant, that

> [t]he failure of defense counsel to impeach the credibility of the State's principal witnesses by reason of their prior criminality as well as by reason of their hopes and fears as a result of their vulnerable status, is impossible to square with the concept of effective representation. Under no possible scenario could this be viewed as within the range of legitimate decisions as to how best to represent a criminal defendant.
>
> [<u>Id.</u> at 314.]

In <u>Holmes</u> the failure to impeach the State's witness, who committed numerous violent crimes, was prejudicial because there was "a pitched credibility battle between defendant and the [eye-witnesses]. The outcome of the case depended on who the jury believed." <u>Id.</u> at 308-10, 312.

Defendant, however, has failed to show he was prejudiced, as <u>Strickland</u>'s second prong requires, because counsel failed to impeach D.D.'s credibility by confronting her concerning her most recent conviction. Considering the surveillance video's depiction of the entire incident and D.D.'s testimony that her friend, A.M., was the instigator of the incident, we join with the PCR judge in concluding there has been no showing that impeaching D.D.'s credibility beyond the State's introduction of her fourth-degree conviction with her more recent third-degree conviction would have resulted in a different trial outcome.

While the recent conviction could have tarnished D.D.'s credibility, her testimony proved more helpful to defendant; noting she was drunk and had engaged defendant in a quarrel before attempting to deescalate the situation once defendant unveiled the gun, and that A.M.'s actions precipitated the shooting. And, unlike the defendant in <u>Holmes</u>, defendant did not testify or present witnesses, thus, he did not present any testimony contradicting D.D.'s testimony. Hence, the PCR judge fittingly denied defendant's request for an evidentiary hearing.

## C.
### Counsel's Failure to Tailor His Summation to the Forthcoming Jury Charge Regarding Recklessness and Failure to Request a Jury Instruction on Causation.

Defendant's last PCR argument derives from the trial court's jury instruction and trial counsel's summation as they relate to the shooting of A.M. He contends trial counsel was ineffective for not tailoring his summation to the forthcoming jury charge regarding recklessness, and for not requesting a jury instruction on causation. Defendant acknowledges the PCR judge did not address contentions that trial counsel was ineffective for not arguing lack of recklessness in his summation and not seeking a jury instruction on causation. Defendant contends even though PCR counsel did not raise these contentions at oral argument, we can address them because "[t]he points raised . . . are derived

A-1236-18T3

from statements by . . . defendant in his certifications and pro se brief" and "that there is sufficient information in the record for this court to address these points."

Our review of defendant's self-represented verified PCR petition and certification, as well as the brief and the undated certification subsequently prepared by assigned PCR counsel, show neither contended trial counsel failed to argue to the jury that defendant lacked recklessness in the shooting or to seek a jury instruction on causation related to the aggravated assault charge against A.M. See R. 3:22-8 ("The petition shall be verified by defendant and shall set forth with specificity the facts upon which the claim for relief is based, the legal grounds of complaint asserted, and the particular relief sought."). Since the contentions were not raised before the PCR judge, defendant must show plain error, meaning trial counsel's alleged ineffectiveness was "clearly capable of producing an unjust result," R. 2:10-2., affecting his "substantial rights," State v. Chew, 150 N.J. 30, 82 (1997) (quoting United States v. Olano, 507 U.S. 725, 734 (1993)). We therefore review the record relevant to defendant's contentions.

Prior to summation, counsel moved to dismiss the charge of aggravated assault of A.M., arguing the indictment only listed the requisite mental state of "purposely and knowingly" while D.D.'s testimony reflected the serious bodily

injury caused to A.M. was either reckless, inadvertent, or in self-defense.[3]  In denying the motion, the trial judge cited N.J.S.A. 2C:1-8(d)(3), which provides:

> A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense.  An offense is so included when:
>
> . . . .
>
> (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

The judge found "that reckless is a lesser count of culpability."  Counsel then advised the judge he objected to instructing the jury on recklessness.

During summation, trial counsel stated:

> [T]he [j]udge is going to instruct you on the law.  And I can only argue the facts that have been presented to you.  I can't make them up.  I can only tell you.
>
> So, you're going to hear the [j]udge instruct you on aggravated assault.  And [A.M.'s] own words, even if accepted by all of you as true, does not constitute an aggravated assault.  It doesn't.

---

[3]  N.J.S.A. 2C:12-1(b)(1) provides "[a] person is guilty of aggravated assault if the person . . . [a]ttempts to cause serious bodily injury to another, or causes injury <u>purposely or knowingly</u> or under circumstances manifesting extreme indifference to the value of human life <u>recklessly</u> causes such injury[.]" (Emphasis added).

It's – you heard [A.M.] specifically say I grabbed it – I – well, he didn't say he punched him. [D.D.] said he punched him. He denied it, even though the video shows he did it. I grabbed his pocket. There was a struggle.

Gun went off. That's not purposefully. That's not knowingly. That's not aggravated assault which was charged in the indictment.

While counsel argued A.M. grabbed the gun in defendant's pocket, he made no reference to defendant not being reckless.

The prosecutor, in her summation argued:

Now, even if you don't believe that defendant shot him [A.M.] purposely and knowingly. The [j]udge will still tell you that you can find his conduct was so reckless that he is still guilty of aggravated assault.

And I submit to you in determining recklessness. What is the conduct of a reasonable person? Did the defendant's conduct deviate so much from the standard of care by bringing a loaded Glock with hollow point bullets on to a PATH train, packed with people. His own two infant children. Was that a gross deviation that resulted in the serious bodily injury to [A.M.]? I submit to you it was.

After summation, the judge denied counsel's objection to the State's comments regarding recklessness. The judge thereafter charged the jury that to find defendant guilty of aggravated assault they must find he "acted purposely or knowingly or acted recklessly." The judge gave the jury extensive

19

instructions on recklessness. The judge did not include any instruction on causation, nor was it requested by either party.

It is apparent that because trial counsel did not argue to the jury defendant's actions were not reckless, the jury was left to consider the State's argument that it could find defendant guilty of aggravated assault against A.M. if he was reckless, and the judge instructed the jury likewise. The State argued defendant was reckless by merely bringing a loaded gun on a crowded PATH train. Defendant now argues counsel's failure to address the mental state of recklessness left him defenseless to the State's summation argument. Defendant asserts this was compounded by counsel's failure to seek a causation charge[4] and

---

[4] Defendant cites Model Jury Charges (Criminal), "CAUSATION (N.J.S.A. 2C:2-3)" (approved June 2013), which provides when reckless or negligent conduct is involved:

> Causation has a special meaning under the law. To establish causation, the State must prove two elements, each beyond a reasonable doubt:
>
> First, but for the defendant's conduct, the result in question would not have happened. In other words, without defendant's actions the result would not have occurred.
>
>     . . . .

failure to argue A.M. was shot due to his superseding conduct in reaching inside defendant's pocket for the gun and causing it to fire.  If the request had been made, defendant contends the trial court would have been obliged to grant it. See State v. Green, 86 N.J. 281, 289-90 (1981) (ruling requests involving essential and fundamental issues or substantially material matters should be honored); State v. Belliard, 415 N.J. Super. 51, 70 (App. Div. 2010) (determining the failure to tailor jury instructions to defense that volitional acts of others could break the causal chain was plain error).

While we can find no legal authority that a trial counsel's failure to request a jury instruction constituted ineffective assistance, our Supreme Court concluded in State v. O'Neil, 219 N.J. 598, 615-17 (2014) that appellate counsel can be found ineffective for failing to raise a jury instruction issue.  Specifically, in O'Neil, the Court found the appellate counsel's failure to challenge the lack of a self-defense jury charge was deficient.  Id. at 606, 612-13.

> Second, [for reckless conduct] that the actual result must have been within the risk of which the defendant was aware.  If not, it must involve the same kind of injury or harm as the probable result and must also not be too remote, too accidental in its occurrence or too dependent on another's volitional act to have a just bearing on the defendant's liability or on the gravity of his/her offense.

Given A.M.'s conduct in placing himself into the quarrel between defendant, defendant's female companion, and D.D., by putting his hand inside defendant's pocket – after defendant put the gun back in his pocket – to take control of the gun, coupled with the State's argument that defendant was reckless for carrying a loaded gun onto a public train, the jury's consideration of A.M.'s conduct may have resulted in a different outcome on the conviction for aggravated assault of A.M. had counsel addressed defendant's reckless state of mind or lack thereof and requested a causation charge. Because we conclude there is no illuminating theory as to why counsel did not argue a defense to recklessness during summation and did not request a jury charge regarding causation, defendant has made a prima facie case of ineffective assistance of counsel.

We therefore remand for an evidentiary hearing to determine whether trial counsel considered arguing defendant was not reckless and why a causation charge was not requested. If at the hearing, the PCR judge determines defendant satisfies his claim that counsel's performance fell below professional norms, the judge should determine the probability of whether the jury's verdict on aggravated assault against A.M. might have been different.

A-1236-18T3

Defendant shall be permitted to supplement the record with any documentation and legal argument that would have been provided in his PCR petition. Of course, the State shall have the right to respond. The PCR judge shall conduct a case management conference within thirty days of this decision to schedule the remand submissions and hearing. We express no view on the merits of defendant's contentions.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1236-18T3