## (February 17, 1981)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGEL FIGUEROA, Appellant. — Judgment of conviction, Supreme Court, Bronx County, rendered March 16, 1979, reversed, on the law and in the exercise of discretion in the interest of justice, and the matter remanded to Supreme Court, Bronx County, for a new trial. Defendant, charged with felonious possession

of a hand gun, interposed the defense of temporary innocent possession *(People v Persce,* 204 NY 397, 402). Even though such a defense requires that the People disprove it beyond a reasonable doubt (Penal Law, § 25.00, subd 1), the defendant, for all practical purposes, carried the actual burden because the People's case was classically simple: patrolmen, responding to a radio call reporting an altercation, find two men on their arrival, one the defendant; a couple leave a building, the female, adverting the officers by an undifferentiated gesture toward the two men, advises that "he has a gun"; each officer starts to frisk one of the men, when a third officer in civilian dress joins them, approaching from defendant's rear, and observes "a revolver with a pearl handle sticking from the middle of his back * * * tucked in his waistband"; he secures the gun and arrests defendant. To make the People's case even simpler, possession alone, without specific intent to use it unlawfully as an element, makes out the crime, criminal possession of a weapon, third degree (Penal Law, § 265.02, subd [1]). In such a situation, any interference with a defendant's right to prove his case is a severe handicap. We find that several erroneous rulings by the court — none so egregious that it alone could be said to bring about an unfair trial — when viewed together, deprived defendant-appellant of a fair forum in which to present his defense. (See *People v Kitt,* 50 AD2d 757.) To begin with, there was an improvident pretrial ruling on the propriety of cross-examination as to prior convictions. *(People v Sandoval,* 34 NY2d 371.) The court barred questioning as to a rape case and two assault cases in 1964 and 1965, a gambling conviction in 1977, and three 1971 drug cases, but ruled that defendant might be cross-examined concerning two weapons counts covered by the disposition by plea of guilty to the three drug cases of 1971. This charge, identical with that for which he was on trial, bore on credibility no more than any of the others against which he was protected by the ruling, and it cannot be said that he would not have been prejudiced thereby in the jury's eyes. We find this ruling directly contrary to the sense of *Sandoval (supra),* and we regard it as an abuse of discretion. The decision is particularly distressing because, obviously, it kept defendant from taking the stand, and he was actually the only witness who could have fully delineated how he came to be involved in this episode. A witness, Clemons, who lived across the street from the scene of defendant's arrest, testified that, awakened by noise at 5:00 A.M., shortly before police arrived, she observed two men fighting and defendant "trying to break up the fight." She continued that defendant took a bag from one of the men and extracted therefrom a white-handled gun, which he pocketed. If accepted by the jury, this evidence would have tended to establish defendant's claim of the innocence of his possession of the weapon. On cross-examination, the prosecutor questioned Clemons as to whether she had told police what she had observed; she had not. It was then argued in summation that, because of this omission, she was unworthy of belief. There had been no endeavor to lay a foundation for this cross-examination by exploring the state of her awareness that there was any such significance to what she had observed as would have exculpated defendant. Further, it was not established that there was such a connection between the witness and defendant as to provide a basis for an argument of existence of a natural impulse to come forward. In addition, there was no duty on her part to volunteer such information even had she been shown to have any realization of the meaning of what she had observed. This prosecutorial conduct was improper. (See *People v Maschi,* 76

AD2d 808, 809; cf. *People v Dawson,* 50 NY2d 311, 321-322*.) An attempt by counsel to establish that her story was not a recent fabrication by showing that she had told him the same thing shortly after the event provides no basis for finding error; after objection to an introductory, improperly framed question had been sustained, counsel never established that the witness' prior allegedly consistent statement was made at a time when there was no motive to falsify. (See Richardson, Evidence [10th ed], § 519.) A third error involved a ruling by the court that one Hernandez, a defense witness, would not be permitted to testify because her proposed testimony would be irrelevant. An offer of proof disclosed that she had played cards with defendant all the night before the arrest until a short time before the quarrel took place into which defendant projected himself. Having had opportunity to observe him closely during their hours together, she saw no signs that he had a gun. A gun in a holster might well have been more evident to the casual observer than an uncovered weapon. Nor should any particular inference be drawn from the fact that it was in a holster when found by police; there is nothing in Clemons' evidence to indicate, one way or the other, whether the gun was or was not encased when she observed it. This evidence would have been relevant and, if accepted by the jury — the sole judge of credibility — would have made the more probable the description by Clemons of what she had seen. The court may have considered this evidence incredible, the jury's function, but characterized it as irrelevant, which it was not. Defendant was entitled to present every element of his case and have the jury pass on it. (Cf. *People v Kitt,* 50 AD2d 757.) And, finally, we find a bit of prosecutorial misconduct which was most prejudicial. Said the prosecutor to the jury: "How [defendant] came into possession of the gun is not relevant here." Not alone was this bald statement directly contrary to the court's later proper charge on the asserted defense, and hence confusing to the jury, but it should have been corrected by a proper judicial ruling the instant it was made. The bare word "sustained" in ruling on defendant's objection was not sufficient. There had been evidence in the case that defendant had made a damaging admission, as well as other evidence that could have been the basis for proper persuasive argument of defendant's guilt without employment of such improper conduct. The concatenation of error as described herein is more than sufficient to persuade us that a new trial should take place. Truly, "proof of guilt was overwhelming", as the dissent comments, but, beyond cavil, this must be so as to a record curtailed as the result of the trial court's several erroneous rulings. Concur — Kupferman, J. P., Sullivan, Carro and Markewich, JJ.

Lupiano, J., dissents in a memorandum as follows: Having examined the record herein, I have come to the conclusion that defendant was not deprived of a fair trial. At the outset, it is noted that proof of guilt was

---

* In his New York Law Journal column "New York Trial Practice" (Jan. 9, 1981, p 2, col 4), Dean Joseph M. McLaughlin comments: "A proper foundation must be laid before *Dawson* will permit impeachment in this fashion. When such questioning begins, the trial judge 'should call a bench conference to ascertain whether the witness refrained from speaking under the advice of defense counsel, for in such a case examination on the issue of the witness' postconsultation silence would be improper and could well result in a mistrial ..' *[Dawson,* supra, p 323]. At the bench conference the District Attorney must demonstrate (1) that the witness was aware of the nature of the charges and (2) had reason to recognize that he could exculpate the defendant; (3) that he had a reasonable motive to come forward and exonerate the defendant and (4) was familiar with the means to make such information available to law enforcement authorities."

overwhelming. In essence, the People presented four eyewitnesses, and introduced into evidence an admission from the defendant that the gun was his, and further submitted in evidence the gun, the bullets, the holster — all seized on defendant's person, and the ballistics report. One Ann Clemons testified for the defense that she looked out her bedroom window on the ground floor and observed a mere 15 feet away from her location the defendant intercede in an altercation between two men and remove a paper bag from one of the men. Defendant thereupon withdrew from the paper bag a gun and put it in his pocket. This witness testified that she saw the police arrive and search one of the two men and the defendant, and saw them seize the defendant. She admitted that she knew defendant from the neighborhood and had had prior conversations with him. She testified that defendant's nickname was "Weeper." She said the defendant threw the paper bag that had theretofore contained the gun to the ground. On cross-examination, the prosecutor asked this witness: "Did you call out to the police that night?" Defense counsel's objection to this question was overruled, because there was prior testimony in the case that a woman had called out to the police the night of the incident. Defense counsel then acquiesced, apparently viewing this a proper question, but was fearful that it might be misconstrued by the jury as imposing an obligation on this witness to volunteer her information to the police. The prosecutor's subsequent question to the witness as to whether she told other people what she saw that night was objected to by defense counsel, and the objection was sustained. This witness further admitted that she had spoken to the defendant two days after this incident and that he had informed her that he was charged with gun possession. One week thereafter, she spoke to defense counsel. However, she did not state whether she imparted this information regarding her observation at the time of the crime to defense counsel, although it is assumed that she did so. On summation, the prosecutor pointed out that this witness' testimony was *tailored* to the incident to favor the defendant, and alluded to the prior relationship between the witness and the defendant. This witness impliedly indicated in her trial testimony that she did not say anything to anybody about this incident until the trial. The prosecutor further pointed out to the jury that this witness "Never tells the police that night — never tells the police or a friend — never tells anybody." Prior to the charge, defense counsel informed the court that he was fearful the jury might misinterpret the prosecutor's comment in summation as requiring this witness to divulge her story to the police. The trial court pointed out that it was going to charge that there was no obligation whatsoever on the part of the defendant or on the part of any of defendant's witnesses to give the defendant's side of the story. Defense counsel acquiesced and acknowledged that this charge would remove any prejudice. The trial court so charged. Under the circumstances herein, the prosecutor's cross-examination was proper in this regard and did not overstep the bounds of propriety (see *People v Dawson,* 50 NY2d 311). The Court of Appeals has recognized that there exists a wide variety of situations in which the natural impulse of a person possessing exculpatory information would be to come forward at the earliest possible moment in order to forestall the mistaken prosecution of a friend, and in such situations, the failure to speak up at a time when it would be natural to do so, might well cast doubt upon the veracity of the witness' exculpatory statements at trial. At no time did the prosecutor improperly stress to the jury that this witness had an obligation to come forward and to divulge her information to the police or to the police as well as to any other party. The trial court also properly sustained the prosecutor's objection to

the testimony of the witness Awilda Hernandez. She was not at the scene of the crime and had not observed the incident. At a Bench conference, out of a hearing of the jury, defense counsel informed the trial court that the only testimony he· intended to elicit from this witness was that she had been with the defendant one-half hour before defendant was found with the gun and had not seen the gun on defendant's person. The trial court found this testimony to be irrelevant and precluded the witness from testifying further in this regard. It must be noted that the court's decision to preclude was reached after defense counsel was afforded ample opportunity to present his argument that he should be permitted to examine this witness. The trial court's ruling was not improper. The only remaining basis on which defendant contends he was deprived of a fair trial is that the court ruled on a *Sandoval* motion that the District Attorney could cross-examine the defendant in regard to a seven-year-old conviction for possession of drugs and a gun. While evidence of the prior possession of drugs would demonstrate the defendant's deliberate determination to further his self-interest, the fact that the present crime for which defendant was being charged related to gun possession might well have warranted the court's precluding the prosecutor from cross-examining the defendant in regard to his prior gun conviction. However, in view of the overwhelming proof of guilt, including defendant's admission that the gun was his, the error, assuming there is error, is *de minimis*. It must be reiterated that defendant, when stopped by the police, was found to have not only a loaded gun on his person, *but also* a holster and 14 additional bullets. Officer Vasquez, in frisking defendant, felt a holster and gun in the vicinity of defendant's waist. Officer Devaney, noticing the handle of the weapon, pulled the gun *out of the holster*. Common sense dictates that under these circumstances the defendant was not one who had temporary innocent possession of the gun as he would have the credulous believe. Accordingly, the judgment convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree should be affirmed.