66303. PETERSON v. THE STATE.

DEEN, Presiding Judge.
    On December 12, 1981, appellant and a friend, Tony Oliver, were arrested for drag-racing in Woodstock, Georgia. One week later, at about 12:40 on the morning of December 19-20, a dynamite charge was detonated at the rear of the Woodstock City Hall, breaking windows and inflicting other damage amounting to approximately $500. An initial investigation revealed no clues as to who was responsible. About three months later, however, the Woodstock Police Department received a telephone call from an anonymous female implicating appellant, Oliver, and several friends of theirs in the affair. Police were able to determine who the caller was and subsequently to learn that the source of her information was her teenage daughter, whose boyfriend was among the group of high school students and drop-outs whom police later charged with the dynamiting. The daughter testified that on the night of the bombing she had received a number of telephone calls from the boyfriend boasting that he and several named friends, including appellant, were planning to bomb the city hall. In the final call, received at approximately 1:00 a.m., he informed her that the plan had been carried out.
    After the suspects were arrested, several of them made statements admitting their own participation in the enterprise and naming appellant Peterson and Oliver as the ring-leaders. Oliver

subsequently admitted his involvement and made a written statement and an oral confession (the latter taped by the interrogating officers). He told of an evening of joy-riding, beer-drinking, and pot-smoking leading up to the bombing, and confirmed others' accounts of how the dynamite had been rigged and detonated.

At trial Oliver and two others who had given statements retracted them and stated that they had had no part in the affair. Several friends of Peterson and the others implicated testified at trial that Peterson had been with them or had been seen by them at various times before, during, and after the period of time during which the events culminating in the bombing would have taken place. There were discrepancies in the accounts given by the various alibi witnesses, however, and the prosecutor cross-examined closely in an effort to undermine their credibility.

A Cherokee County jury found appellant guilty of both first-degree arson and criminal possession of explosives. He received a twenty-year sentence on the arson count, and a six-year sentence for criminal possession, the latter to be served on probation at the completion of the other sentence. He was also ordered to make restitution. On appeal he enumerates as error the following: (1) the trial court's permitting the prosecution to impeach its own witnesses on prior inconsistent statements, allegedly without laying a proper foundation; (2) an alleged shifting of the burden of proof resulting from the prosecution's cross-examination of appellant's alibi witnesses; (3) the court's overruling of appellant's motion for a mistrial based on the cross-examination of the alibi witnesses; and (4) allegedly improper jury instructions concerning alibi. *Held:*

1. Under OCGA § 24-9-83 (Code Ann. § 38-1803) "[a] witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him. . . the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible. If the contradictory statements are in writing and in existence, they shall be shown to him or read in his hearing." The statute goes on to characterize the above procedure as "lay[ing] this foundation." Our scrutiny of the record in the instant case indicates that the requirements of the statute were fulfilled. With a possible single exception, when the court sustained a defense objection pending the laying of a proper foundation whereupon the prosecution immediately proceeded to fill out the foundation, the prosecuting attorney in every instance alluded to "the time, place, person, and circumstances attending the former statements" and showed the

witness the statement as he read appropriate excerpts.

As to the state's impeachment of its own witnesses, the Supreme Court of Georgia held in *Wisdom v. State,* 234 Ga. 650 (217 SE2d 244) (1975), that to meet the requirement of establishing entrapment under OCGA § 24-9-81 (Code Ann. § 38-1801) before one might impeach his own witness, a showing of prejudice was no longer necessary. In *Davis v. State,* 249 Ga. 309, 314 (290 SE2d 273) (1982), the Supreme Court also removed "the requirement of any show of surprise before a party is allowed to impeach his own witness. If, at the time of the questioning, a party has knowledge of a prior statement by one of his witnesses which contradicts testimony that witness has just given, that party has been sufficiently entrapped so that he may impeach his witness by use of the prior inconsistent statement." See also *Ranger v. State,* 249 Ga. 315 (290 SE2d 63) (1982); *Carter v. State,* 244 Ga. 803 (262 SE2d 109) (1979). This enumeration is without merit.

2. As to appellant's contention that the prosecution unfairly shifted the burden of proof by cross-examining alibi witnesses as to why they had not come forward sooner, it is clear from the trial transcript that the purpose of the cross-examination was to test the witnesses' credibility. This, of course, is an entirely legitimate use of a cross-examination, *Head v. State,* 235 Ga. 677, 678 (221 SE2d 435) (1975); and in cases such as that *sub judice,* to ask witnesses' reasons for not informing law enforcement officers of the defendant's possible alibi defense does not violate constitutional rights. *Hill v. State,* 238 Ga. 354 (233 SE2d 182) (1977); *Day v. State,* 237 Ga. 538 (228 SE2d 913) (1976); *Head v. State,* supra. Compare *Conner v. State,* 160 Ga. App. 202 (286 SE2d 441) (1981); *Montgomery v. State,* 140 Ga. App. 286 (231 SE2d 108) (1976), in which the court upheld the constitutionality of the prosecuting attorney's drawing inferences, in his closing argument, from the non-production of witnesses. This enumeration is also without merit.

3. Because we have held, supra, that the trial court did not err in permitting the prosecution to cross-examine the alibi witnesses regarding their failure to come forward with their purportedly exculpatory evidence, it follows that the court's denial of appellant's motion for a mistrial based on this alleged error is also without merit.

4. The court's jury instruction on alibi was, in pertinent part, as follows: "Any evidence in the nature of an alibi should be considered by the jury in connection with all the other facts in the case, and if, in so doing, the jury should entertain a reasonable doubt as to the guilt of the accused, they should acquit. If not, they should convict." As appellant concedes, the first sentence of this instruction is a verbatim repetition of that approved in *Patterson v. State,* 233 Ga. 724 (213

SE2d 612) (1975). The second sentence merely alludes to the alternative result of the jury's consideration of "all the . . . facts in the case." Scrutiny of the jury charge as a whole indicates that it is an accurate and balanced exposition of relevant law. Viewed in this context, the sentence to which appellant takes exception could not reasonably be considered to have been prejudicial in any way.

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED MAY 20, 1983.

*George J. Thomas II, Mark O. Shriver IV,* for appellant.
*Rafe Banks III, District Attorney, Channing Ruskell, Assistant District Attorney,* for appellee.