686 A.2d 1083

**Tyrone DAVIS,**

v.

**STATE of Maryland.**

**No. 38, Sept. Term, 1995.**

Court of Appeals of Maryland.

Dec. 26, 1996.

Richard K. Jacobson, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Petitioner.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and ROBERT C.

MURPHY,* Chief Judge, (retired).

BELL, Judge.

The issue which Tyrone Davis, the petitioner, raises before this Court is the propriety of the trial court's ruling allowing the prosecution to cross-examine a defense alibi witness regarding his failure, prior to trial, to inform the police or the prosecution of exculpatory evidence, *i.e.*, the defendant's alibi, of which the witness was aware. More particularly, we address whether, and, if so, under what circumstances, an alibi witness's pretrial silence is relevant to the impeachment of that witness's testimony at trial. The Circuit Court for Baltimore City permitted the cross-examination and, in an unreported opinion, the Court of Special Appeals affirmed. We granted the writ of certiorari at the petitioner's request and, for the reasons that follow, we too will affirm.

## I.

Because, rather than the sufficiency of the evidence, the issue in this case pertains to an evidentiary ruling at trial, it is sufficient to recount that the petitioner, who had been identified by the victim as the person who attempted to rob him, was apprehended by the police after a short chase. He was arrested and charged with the attempted robbery of Earl Spain, a State correctional officer. Discovered in his possession was a plastic toy gun, which the victim identified as the weapon used in the attempted robbery.

Consistent with his not guilty plea, the petitioner denied attempting to rob the victim. To substantiate that defense, he called Mr. Kabacca Bey as an alibi witness. According to Mr. Bey, the petitioner was either within his sight or in his presence during the entire time when the victim claimed to have been accosted by the petitioner. More particularly, he

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

testified to seeing the victim and petitioner engage in conversation on two separate occasions. According to Mr. Bey's testimony, after each occasion, the victim left the area only to return later. While the victim was away from the area, Mr. Bey testified that he and the petitioner talked together. When the victim returned on the second occasion, the police were with him and the petitioner and other men on the corner ran away, as did Mr. Bey.

During the cross-examination of Mr. Bey, the following occurred:

Q [By the prosecutor] You came to court one other day besides this day, is that correct?

A Right.

Q What day was that?

A Tuesday, the 22nd.

Q Did you ever try to speak to anyone in the State's attorney's office or the police about this case?

A No.

Q You just wanted to come in and—

A Oh you mean—

Q About this case, yes?

A After, after came here or prior to coming in? No, I told his fiancé, say, you know, that she can tell him that he can, you know, use me as a witness.

Q But after you came to court, you still didn't try to talk to the police or State's attorney's office—

MR. ROGERS [Defense Counsel]: Objection.

Q Did you?

THE COURT: Overruled.

A Why? I don't understand the question.

Q To say this, this couldn't have happened.

A I still don't understand the question. I don't know why I would have to go to—

Q Let's just answer the question. Did you try to talk to the police when you came to court on Tuesday?

A    I don't understand the procedure.

Q    Did you talk to the police?

A    No, no.

Q    Did you make any effort to talk to the police?

A    No.

Q    Did you try to talk to the State's attorney's office?

A    No.

The State had previously established that Mr. Bey knew the petitioner, the circumstances under which they met and the length of time they had known each other.   In addition, the State brought out that Mr. Bey was aware of the petitioner's arrest and the reason for that arrest.   It had shown also when Mr. Bey acquired his knowledge.   Finally, the State's cross-examination revealed that the sources of Mr. Bey's information were the petitioner's fiancé and the man who was with the petitioner on the day of the incident.

## II.

### A.

Absent legislative directive, a citizen ordinarily is not legally obligated to volunteer exculpatory information to law enforcement authorities.  *See, e.g., State v. Silva,* 131 N.J. 438, 621 A.2d 17, 21 (1993) (citing *State v. Bryant,* 202 Conn. 676, 523 A.2d 451, 465 (1987)); *Commonwealth v. Brown,* 11 Mass. App.Ct. 288, 416 N.E.2d 218, 224 (1981) *cert. denied,* 383 Mass. 891 (Mass.1981); *People v. Brown,* 62 A.D.2d 715, 405 N.Y.S.2d 691, 695 (N.Y.App.Div.1978), *aff'd,* 48 N.Y.2d 921, 425 N.Y.S.2d 54, 401 N.E.2d 177 (1979); *People v. Dawson,* 50 N.Y.2d 311, 428 N.Y.S.2d 914, 918–19, 406 N.E.2d 771, 775 (1980); *United States v. New York Tel. Co.,* 434 U.S. 159, 175–76 n. 24, 98 S.Ct. 364, 373–74 n. 24, 54 L.Ed.2d 376, 385 n. 24 (1977).   Therefore, "an assumption that it is natural for a defense alibi witness to tell his or her story to the police is not always warranted." *People v. Fuqua,* 146 Mich.App. 250, 379 N.W.2d 442, 445 (1985) *See also Bryant,* 523 A.2d at 466.   This does not mean, however, as some courts have held, that an

alibi witness's pretrial silence may never be the basis for the impeachment of his or her trial testimony. *See e.g. United States v. Young,* 463 F.2d 934, 938 (D.C.Cir.1972) ("[N]o inference can be drawn from the fact that a witness did not go to the police when he learns they have made an arrest of a defendant for a crime committed at a time for which he could provide alibi testimony."); *Whiteside v. Bordenkircher,* 435 F.Supp. 68, 71 (1977). Indeed, whether, and under what circumstances, "prior silence is so inconsistent with ... present statements that impeachment by reference to such silence is probative," *Jenkins v. Anderson,* 447 U.S. 231, 239, 100 S.Ct. 2124, 2132, 65 L.Ed.2d 86, 93 (1980), are matters left to each jurisdiction to determine as a part of its Rules of Evidence. *Id.*

The majority of the courts that have considered the issue, while acknowledging that alibi witnesses are not legally bound to report exculpatory evidence to law enforcement authorities, conclude that there is "no sound reason flatly [to] prohibit this type of cross-examination of a defense witness in all criminal proceedings." *Dawson,* 428 N.Y.S.2d at 921–22, 406 N.E.2d at 778. *See also People v. Ratliff,* 189 Cal.App.3d 696, 701, 234 Cal.Rptr. 502 (1987). In fact, some of those courts hold that such impeachment is always appropriate. *See e.g., Peterson v. State,* 166 Ga.App. 719, 305 S.E.2d 447, 449 (1983) (the witness's failure to inform the authorities of facts which would have tended to absolve his roommate of any criminal wrongdoing was a proper subject for impeachment by the State during cross-examination.); *People v. Outlaw,* 75 Ill.App.3d 626, 31 Ill.Dec. 339, 353, 394 N.E.2d 541, 555 (1979) ("[A] prosecutor [is permitted] to inquire of witnesses as to whether they had told the same story previously in order to determine whether the testimony was recently fabricated.").

Other courts, indeed, the majority, view the question as whether pretrial silence is relevant to the credibility of the alibi witness's trial testimony. These courts recognize that pretrial silence may be relevant to the credibility of exculpatory testimony given at trial, but only if "the natural impulse of a person possessing exculpatory information would be to come

forward at the earliest possible moment in order to forestall the mistaken prosecution...." *Dawson,* 428 N.Y.S.2d at 919, 406 N.E.2d at 775. In that event, they point out, the witness's pretrial silence "is a form of conduct that may be analogized to a prior inconsistent statement by the witness." *Id.* 428 N.Y.S.2d at 921–22, 406 N.E.2d at 778 ("the witness' prior failure to come forward [is admissible] insofar as it casts doubt upon the witness' in-court statements by reason of its apparent inconsistency"); *People v. Van Zile,* 48 Ill.App.3d 972, 6 Ill.Dec. 747, 752, 363 N.E.2d 429, 434 (1977) (where it would be reasonable for an alibi witness to disclose the exculpatory evidence to the authorities, the inference raised by the witness's silence is inconsistent with that witness's testimony); *Brown,* 416 N.E.2d at 224 ("[T]he failure of a witness to offer the information when it would have been natural to do so might well cast doubt on the veracity of the witness' trial testimony ... [and] is akin to a witness' prior inconsistent statement."). *See also United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99, 104 (1975) ("[A]s a preliminary matter ... the court must be persuaded that the statements are indeed inconsistent.... If the government fails to establish a threshold inconsistency between silence at the police station and later exculpatory testimony at the trial, proof of silence lacks any significant probative value and must therefore be excluded."); *U.S. v. Carr,* 584 F.2d 612, 618 (2nd Cir.1978)(citing *U.S. v. Rice,* 550 F.2d 1364, 1373–74 (5th Cir.1977), *cert. denied,* 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977)); *U.S. v. Standard Oil Co.,* 316 F.2d 884 (7th Cir.1963); *Silva,* 621 A.2d at 21 ("[W]hen a court finds that 'silence may reasonably be viewed as inconsistent with [the witness's] testimony ...' the Rules of Evidence allow cross-examination on the prior inconsistency.") (Quoting *State v. Marshall,* 260 N.J.Super. 591, 617 A.2d 302, 305 (1992)). Such statements are relevant and, hence, admissible to impeach the witness's trial testimony.

## B.

Critical to the relevance determination, *i.e.,* whether the witness's pretrial silence is inconsistent with his or her trial

testimony exculpating the defendant, is that the natural response of the witness be to come forward, at the earliest possible time, with any exculpatory information regarding the defendant, he or she may have and relate it to the police or the prosecution. Whether, in the given case or situation, such a natural tendency exists is a matter of proof. *Brown*, 416 N.E.2d at 225. The party seeking to impeach the witness has the burden of proof in that regard. *Id.* Initially this burden can be met by laying a proper foundation, *i.e.*, producing evidence from which it could be concluded that the witness's pretrial silence is inconsistent with the witness's pretrial possession of information exculpatory of the defendant. The threshold fact to be established, by way of foundation, is that the natural response of the witness, assuming the witness was in possession of exculpatory evidence, would have been to disclose that information to the proper authorities. From that fact, the inconsistency between his or her pretrial silence and his or her trial testimony may be inferred. *Silva*, 621 A.2d at 22. If that burden is not satisfied "proof of silence lacks any significant probative value and must therefore be excluded." *Hale*, 422 U.S. at 176, 95 S.Ct. at 2136, 45 L.Ed.2d at 104.

The trial court is charged with making the determination as to whether, under the circumstances of a particular case, an alibi witness's failure to report exculpatory evidence is relevant, *see Grandison v. State*, 341 Md. 175, 206, 670 A.2d 398, 413 (1995); *Ratliff*, 189 Cal.App.3d at 702, 234 Cal.Rptr. 502; *Dawson*, 428 N.Y.S.2d at 921–22, 406 N.E.2d at 778, and, thus, constitutes grounds for impeachment. *State v. Ghere*, 201 Conn. 289, 513 A.2d 1226, 1234 (1986); *Brown*, 416 N.E.2d at 224–25; *Dawson*, 428 N.Y.S.2d at 921–22, 406 N.E.2d at 778. Consequently, determining whether the required foundation has been laid is committed to the trial court's discretion, which will not be disturbed absent a manifest abuse of discretion. *Oken v. State*, 327 Md. 628, 669, 612 A.2d 258, 278 (1992) (citing *Trimble v. State*, 300 Md. 387, 401–02, 478 A.2d 1143, 1150 (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985)). This means that the court must be persuaded that the witness's pretrial silence with regard to

the exculpatory testimony and his or her trial testimony are, indeed, inconsistent. That determination is a preliminary one that must be made prior to any inquiry being pursued with regard to the witness's pretrial silence. *Hale,* 422 U.S. at 176, 95 S.Ct. at 2136, 45 L.Ed.2d at 104. It is preferable that the determination be reflected in an express finding; however, because judges are presumed to know and, properly to have applied, the law, *Beales v. State,* 329 Md. 263, 273, 619 A.2d 105, 110 (1993), where the required foundation is itself independently admissible, it may be implicit.

The determination of the ultimate issue, the credibility of the alibi witness and, in particular, the legitimacy of the alibi he or she provides, is entrusted to the trier of fact, in this case, the jury. *Dawson,* 428 N.Y.S.2d at 921–22, 406 N.E.2d at 778; *People v. Thomas,* 191 A.D.2d 600, 595 N.Y.S.2d 72, 73 (1993). Of course, the jury is not bound to accept the trial court's preliminary determination. That preliminary determination merely explains why, *i.e.,* because it is relevant, the State is permitted to cross-examine the alibi witness regarding his or her pretrial silence. The significance of the witness's pretrial silence is another matter which must be determined by the jury. *State v. Brown,* 16 Utah 2d 57, 395 P.2d 727, 729 (1964)("[W]hen a person claims to have . . . exculpatory information and remains silent when it would be natural to expect that persons of normal sensibilities and concern for others would speak, that fact may be shown as having a bearing on the credibility of the witness and upon the existence or non-existence of the facts the witness later comes forward to assert."). Thus, the trial court, on request, *see* Maryland Rule 4–325(c),[1] must instruct the jury that the alibi witness is not obligated, by law, to report exculpatory evidence he or she

---

1. Maryland Rule § 4–325(c) provides in pertinent part:
   (c) How Given.— The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by the instructions actually given.

may possess to law enforcement authorities and that the jury must determine, based upon the attendant facts and circumstances presented by both the prosecution and the defense, whether the alibi witness's testimony is credible. *Dawson,* 428 N.Y.S.2d at 921–22, 406 N.E.2d at 778; *Thomas,* 595 N.Y.S.2d at 73.

The foundation prescribed by the cases requiring a preliminary determination of relevance consists of evidence that the witness: (1) had a relationship with the defendant sufficient to motivate the witness to act to exonerate the defendant; (2) was aware of the nature of the charges pending against the defendant; (3) had knowledge that he or she was in possession of exculpatory information; and (4) had knowledge of the procedural means by which to make such information available to law enforcement authorities. *Dawson,* 428 N.Y.S.2d at 921 n. 4, 406 N.E.2d at 777 n. 4.[2] *See also People v. Kelly,* 209 A.D.2d 439, 618 N.Y.S.2d 821, 822 (1994); *Silva,* 621 A.2d at 20; *Ratliff,* 189 Cal.App.3d at 696, 234 Cal.Rptr. 502; *Bryant,* 523 A.2d at 466; *People v. Watson,* 94 Ill.App.3d 550, 50 Ill.Dec. 21, 27, 418 N.E.2d 1015, 1021 (1981); *People v. McMath,* 104 Ill.App.2d 302, 244 N.E.2d 330, 336 (1968), *aff'd* 45 Ill.2d 33, 256 N.E.2d 835 (1970), *cert. denied,* 400 U.S. 846, 91 S.Ct. 92, 27 L.Ed.2d 83 (1970); *Fuqua,* 379 N.W.2d at 445. In *Brown,* 416 N.E.2d at 224, the court added to the list of foundational requirements, whether the witness maintained silence at the request of the defendant, the defendant's counsel or both. *See,* to the same effect, *Commonwealth v. Egerton,* 396 Mass. 499, 487 N.E.2d 481, 487 (1986).

## C.

Of the foundational requirements the courts have prescribed, only one of them, the nature of the relationship

---

**2.** *But see People v. Allen,* 74 A.D.2d 640, 425 N.Y.S.2d 144, 148 (1980) ("This court has often held that a prosecutor may not attempt to discredit an alibi witness upon the ground that the witness did not inform law enforcement authorities of his or her knowledge.") (citation omitted).

between the witness and the defendant, directly informs the inquiry whether the natural response of a witness in possession of exculpatory information would be to come forward and disclose that information to the police or the prosecution. If they do so at all, the others inform that inquiry only indirectly. What they do directly is explain why, in a particular case, the witness did, or could, not disclose the exculpatory evidence pretrial. Assuming possession of the requisite information, a close friend, relative, or the like, of the defendant could be expected to act to exonerate the defendant and, so, could be expected to inform the police or the prosecution immediately of any exculpatory evidence he or she possessed. *Silva*, 621 A.2d at 22. It is the relationship of the alibi witness to the defendant that is determinative of that witness's natural tendency so to respond. Indeed, the cases espousing the majority view recognize that the natural tendency of an alibi witness to report exculpatory information to law enforcement authorities can be inferred from the nature of the relationship between the witness and the defendant. *Id.* at 21 ("[W]hen an alibi witness has a close relationship with the accused, as with the mother/son relationship . . . or the brother/sister relationship . . . a jury can infer that the alibi witness' natural conduct would be to report the alibi to the authorities."); *Ghere*, 513 A.2d at 1235 ("[A] witness in many instances naturally may be expected to convey such information, especially if the witness is friendly with the accused . . . ."); *Brown*, 416 N.E.2d at 224 ("[T]here are many situations, however, where the natural response of a person in possession of exculpatory information would be to come forward in order to avoid a mistaken prosecution of a relative or a friend."); *Dawson*, 428 N.Y.S.2d at 921, 406 N.E.2d at 777 ("[T]he inferences which may be drawn from [a defendant's] silence may be highly prejudicial. The same cannot always be said for an ordinary witness who may have no personal stake in remaining silent and who, indeed, may very well have a personal interest in speaking up in order to aid the defendant. It is this interest in speaking up which, in a given case, may render the witness' failure to do so of probative worth when used to impeach his or her

testimony."). The nature of the relationship, including its closeness, may also be dependent on the facts and circumstances of the particular case.

An alibi witness's knowledge of the defendant's predicament, of the procedure for reporting exculpatory information to the proper authorities, or any other reasons that a witness may be unable to disclose the exculpatory evidence pretrial is not reflective of a natural tendency, on the part of that witness, to act to exonerate the defendant; it simply explains his or her inability to act in compliance with that tendency. The relationship between the alibi witness and the defendant, on the other hand, has an independent relevance. Not only does it directly inform the inquiry whether the witness's natural response would be to report the alibi to the authorities, but it is also relevant to whether that witness is biased in favor of the defendant. Consequently, whether this factor supports the court's allowance of the cross-examination is reviewable, even when the court has made no explicit finding with respect to it.

Requiring a foundation broader than the relationship between the witness and the defendant, to include knowledge of the defendant's predicament and the means by which to report such information, as well as reasons why, in this particular case, the witness did not disclose the alibi, presents quite a different situation. Under that approach, the relevance of the witness's pretrial silence depends upon the trial court's preliminary factual finding as to each of the foundational elements. This is so because the majority view proceeds on the premise that, simply because, under certain circumstances, pretrial silence may be inconsistent with a witness's possession of exculpatory evidence, it does not follow that it always will be. The question of pretrial relevance is a matter to be determined on a case-by-case basis. As pointed out in *Brown*,

> There may be ... situations ... where it would not be natural for the witness to offer exculpatory evidence to law enforcement officials. In these circumstances, the witness's failure to speak is perfectly consistent with his trial testimony. Some individuals, for example, may believe that the

disclosure of their information to the police would be futile. Indeed, the prosecutor conceded in the present case that the disclosure of the witness's information would not have led to the defendant's release. In other situations, the witness may not be aware of the charges against the defendant with sufficient detail to know that he possesses important exculpatory information. Finally, some individuals may have been implicitly told by the defendant's lawyer not to discuss the case.

416 N.E.2d at 224.

The relevance of the witness's pretrial silence is a function of the foundation required to be laid and each component of that foundation involves a factual determination. As noted, only the relationship between the defendant and the alibi witness has independent relevance and, thus, is independently admissible without regard to any tendency it may have to establish the natural impulse of the alibi witness to have disclosed the exculpatory evidence to the authorities. The other "foundational" requirements initially have relevance only with regard to whether the witness's pretrial silence constitutes an inconsistency with the witness's trial testimony and, thus, are only conditionally admissible. They are not relevant to any issue before the court until, and unless, the trial court decides that the witness's pretrial silence is inconsistent with his in-court testimony and permits the State to cross-examine the witness as to that silence. Once that determination is made, the witness's credibility on that point is at issue. Knowledge of whether, when, how and to whom exculpatory evidence, possessed by the witness was reported bears on that issue, as well as on the witness's general credibility, the ultimate determination of both of which is entrusted to the trier of fact.

Thus, in a jury trial, requiring the State to lay a foundation consisting of the witness's relationship to the defendant, the nature and extent of that witness's knowledge, including his or her familiarity with the means by which to report exculpatory information to the authorities, where the defendant lodges an objection, a hearing outside the hearing of the jury will be

required. The hearing will permit the trial court to make the required findings of fact on each of the "foundational" requirements, before the witness's pretrial silence can be proven. Thereafter, evidence concerning each of those factors is independently admissible. To determine what exculpatory information the witness has, when he or she acquired it, whether he or she is familiar with the means by which to report it, and whether non-disclosure was the result of a request by the defendant or counsel, in the absence of direct evidence, necessarily will require an assessment of the credibility of the witness. *See Dawson,* 428 N.Y.S.2d at 921, 406 N.E.2d at 777 ("[T]he information elicited during this type of questioning might well aid the trier of fact in its effort to determine whether the testimony of a defense witness is an accurate reflection of the truth or is, instead, a 'recent fabrication.' "). That ordinarily is a matter for the jury to decide. *But see Ebb v. State,* 341 Md. 578, 590, 671 A.2d 974, 980 (1996); *Watkins v. State,* 328 Md. 95, 98–99, 613 A.2d 379, 380–81 (1992).

### III.

We agree with those cases that hold that an alibi witness's pretrial silence may be relevant to that witness's credibility. Moreover, we believe that the relevance of that witness's pretrial silence must be established as a matter of foundation prior to the proponent of the impeachment evidence being allowed to inquire into it. It is enough of a foundation, however, we believe, if the proponent of the impeachment evidence establishes a relationship between the witness and the defendant, or circumstances, such as to permit the trial court to conclude that it would have been a natural impulse on the part of the witness to have come forward with the exculpatory evidence. The latter requirement recognizes that whether it would be natural for a witness with a particular relationship to the defendant to come forward may also depend upon the circumstances existing at the time. The extent of the witness's knowledge, the timing of its acquisition, etc. are matters, we hold, of defense or explanation, offerable by the

defense, for the purpose of allowing the trier of fact, fully and accurately to evaluate the witness's testimony. Not only does such evidence not directly relate to the natural impulse of the witness to come forward with exculpatory evidence, but it is not evidence readily available to the prosecution. Since it is more readily available to the defense, it is more appropriately offered by the defense.

■ We hold that, before the prosecution may cross examine an alibi witness regarding his or her pretrial silence, it must lay a foundation. The foundation consists of establishing the existence of a relationship between the witness and the defendant, or circumstances, such that it would be the natural response of the witness to act to exonerate the defendant, a relationship and/or circumstances of such a nature that, if the witness possessed evidence exculpating the defendant, he or she would disclose it immediately to law enforcement authorities. This is sufficient to give rise to an apparent inconsistency between the witness' pretrial silence and his or her testimony at trial. *Hale,* 422 U.S. at 176, 95 S.Ct. at 2136, 45 L.Ed.2d at 104.

In addition to the fact of pretrial disclosure, those factors which, under the majority view, are characterized as foundational prerequisites, are the "attendant facts and circumstances", on the basis of which the credibility of the alibi witness's testimony is to be evaluated. Whether, and when, a witness acquired knowledge making it possible for that witness to provide law enforcement authorities with exculpatory evidence, and his or her awareness of the procedure or means of doing so, do not tend to prove a natural tendency to report exculpatory information and, thus, do not give rise to an impeachable inconsistency; only the relationship between the witness and the defendant gives rise to such an inference. Instead, those matters tend to explain why the witness did not, in the particular case at issue, disclose the exculpatory information. Indeed, that is their only relevance. Consequently, the proponent of the alibi evidence is best situated to present the reasons why, although it would have been natural

to do so, the alibi witness failed to disclose to the authorities information he or she possessed which tended to exculpate the defendant. Such evidence is more logically and appropriately presented on redirect examination, to rehabilitate the alibi witness. To place that burden on the State would be both onerous and illogical.

As we see it, the State may inquire into the alibi witness's pretrial silence once it has established that the relationship between the witness and the defendant is such that the witness would have a natural tendency to disclose the exculpatory evidence he or she possessed to the proper authorities. Based on that inquiry, the jury could infer that the witness's pretrial silence is inconsistent with his or her trial testimony. The defense would then be free to attempt to negate the inconsistency by explaining his or her silence. As the court in *State v. Archer*, 32 N.M. 319, 255 P. 396, 400 (1927) opined:

> It is well understood that, if the witness, when he has an opportunity to speak, and where it would be natural to speak . . . fails to make an important disclosure which he afterwards makes on the stand, it is a circumstance which, although susceptible of explanation, if unexplained, tends to impair his credibility, and it is error to refuse cross-examination of the witness to develop such facts.

Thus, we review the judgment of the circuit court to determine whether the record reflects a relationship between Mr. Bey and the petitioner that would support a conclusion that it would have been natural for Mr. Bey to have contacted the police and, therefore, that his failure to do so constitutes a prior inconsistent statement. In this case, the trial court's finding is implicit. As previously noted, it will not be disturbed absent a manifest abuse of discretion. *Oken*, 327 Md. at 669, 612 A.2d at 278 (citation omitted).

## IV.

The petitioner contends, that "[t]he record does not reflect any reason why Mr. Bey would naturally feel obligated

to testify on Petitioner's behalf." He directs our attention to several cases in which the alibi witnesses were either close friends or relatives of the defendant. *See Ratliff,* 189 Cal. App.3d at 700, 234 Cal.Rptr. 502 (defendant's sister and close family friends); *Egerton,* 487 N.E.2d at 486 (defendant's mother and a close friend); *Young,* 463 F.2d at 937 (someone with whom the defendant had worked and socialized).

There is no prescribed or bright line by which the closeness of the relationship between a defendant and his or her alibi witness must be assessed. While the cases cited by the petitioner all involved alibi witnesses who were close friends or relatives of the defendant, they do not exclude other, less intimate relationships. All that is required is that the relationship be such that it would motivate the witness to come forward in an effort to exculpate the defendant. *People v. Figueroa,* 80 A.D.2d 520, 436 N.Y.S.2d 1, 2–3 (1981) (court excluded proof of silence, reasoning that because the alibi witness was a neighbor, with whom the defendant had had little contact, "there was [no] connection between the witness and defendant as to provide a basis for an argument of existence of a natural impulse to come forward").

Mr. Bey testified, on cross-examination, regarding the nature of his relationship with the petitioner, as follows:

I met him a few times within a week. First time was like, like the Friday before this incident supposed [sic] to have taken place.... I've seen him but we never—I've seen him, you know, from a distance.... Well actually he spoke to me because he stopped the cars for me. I was trying to get across the street and I had my crutches and the cars just didn't seem like they would stop, the ones that was [sic] coming around the corner and he say [sic], man, you need some help, and he came out and he stopped the cars for me.... Well, we actually—Well, we met that time when he was stopping the cars but we actually met when we was [sic] talking about that time and different things and he offered to buy me a beer.

He also acknowledged telling the petitioner's fiancé, when speaking to her regarding the petitioner's arrest:

> If there was anything that I could do, you know, to help in the matter, then I was willing to do that because he did it for me.

Moreover, the petitioner's fiancé, and Steve, the petitioner's companion on the day of his arrest, divulged to Mr. Bey the details of the petitioner's arrest. Considered together, the court's implicit finding that it would have been natural for Mr. Bey to disclose, to the authorities, information he possessed, which could exonerate the petitioner, is supported by the record.

The facts of the case *sub judice* are analogous to those considered in *McMath, supra*, 244 N.E.2d 330. The alibi witness in that case was a gas station attendant. He was acquainted with the defendant as a result of the defendant frequently being at the gas station. On the night of the robbery with which the defendant was charged, the victim went to the gas station and had the defendant's alibi witness place a call to the police, reporting the crime. Although the witness spoke to the police and witnessed the defendant being arrested, he did not tell the police that the defendant had been at the gas station at the time that the victim was being robbed. The trial court permitted the gas station attendant to be cross-examined regarding his pretrial silence. The Illinois intermediate appellate court affirmed, opining,

> Sutton knew that there had been a robbery and had even placed the call to the police as soon as he had learned of it. When the police arrived, he had discussed the robbery with them and knew that they were investigating it. . . . It was a fair argument on behalf of the State that a man who knew the defendant well . . . would have mentioned something to the police when given the opportunity to speak.

244 N.E.2d at 336.

We reach the same conclusion on the facts before us. Given Mr. Bey's testimony describing his relationship to the defendant, and the attendant circumstances, we conclude that the

trial court did not abuse its discretion in permitting him to be cross-examined as to his pretrial silence.

The petitioner also contends that the State failed to prove, as it was required to do as a foundational prerequisite to cross-examining Mr. Bey concerning his pretrial silence, that Mr. Bey was aware of the nature and seriousness of the charges against the petitioner [3] or that he was aware of the procedural means to disclose exculpatory information to the appropriate law enforcement authorities. Inasmuch as we do not view these matters as foundational,[4] but rather as explana-

---

**3.** During cross-examination of Mr. Bey, the State did inquire of Mr. Bey and did explore what knowledge he had with regard to the nature and seriousness of the charges against the petitioner:

Q: [By the Prosecution] When did you find out that the defendant had been arrested?
A: A few days later. Few days.
Q: Who told you?
A: The guy, I saw the guy that he was with.
Q: Steve?
A: Yes . . .
Q: When Steve told you that the defendant was arrested, did you call the police?
A: No, I tried to get in touch with, with, his fiancé.
Q: And did she tell you everything that had happened—
A. Objection.
Q: —with respect to this case?
   Defense Counsel: Objection
COURT: Overruled.
A: No, she just told me he was locked up and told me what he was locked up for.

From this colloquy, the jury reasonably could have found that Mr. Bey was aware, not only of the petitioner's arrest arising out of the subject incident, but had knowledge of the reasons for that arrest.

**4.** To be sure, the witness testified that he did not understand the procedure for disclosure of exculpatory evidence to the police. It is also true that there is no other evidence in the record indicating the contrary. Nevertheless, the jury was not obliged to believe Mr. Bey. It need not have accepted that explanation and thus credited the petitioner's alibi.

Even if the witness's knowledge of the charges and the procedure for disclosing exculpatory evidence were foundational, the petitioner did not object on that basis or, for that matter, to the State's cross-examination along those lines. Thus, he waived any ground on the basis of which that evidence could have been excluded. See Maryland Rule 4–323(a).

tory of why the witness did not disclose the exculpatory information pretrial, and so, are matters addressed to the jury to assist it in evaluating the alibi witness's credibility, there was no error. The trial court simply was not required to resolve those issues, whether disputed or not. And since no exceptions were taken to the jury instructions,[5] we presume that the jury was adequately instructed and complied with the instructions it was given.

*JUDGMENT AFFIRMED.*

*COSTS TO BE PAID BY THE PETITIONER.*

RAKER, J., concurs with opinion.

ELDRIDGE, J., dissents with opinion.

RAKER, Judge, concurring:

I concur in the result affirming the conviction because I believe that although the trial court erred in permitting the cross-examination of the alibi witness, the error was harmless beyond a reasonable doubt. *See Rubin v. State*, 325 Md. 552, 578–80, 602 A.2d 677, 689–90 (1992); *Dorsey v. State*, 276 Md. 638, 646–61, 350 A.2d 665, 670–79 (1976). I do not believe there was any reasonable possibility that evidence of Mr. Bey's failure to come forward to the police contributed to the jury's decision to find Petitioner guilty. We must credit jurors with a modicum of common sense. It is unlikely that jurors would conclude that Mr. Bey lacked credibility simply because he did not go to the police or the State's Attorney

---

**5.** The petitioner neither asked for nor did the trial judge give, on its own motion, an instruction on the significance of the alibi witness's pre-trial silence. *See* Maryland Rule 4–325(e), which provides:

(e) Objection.— No party may assign as error the giving or failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however, take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

with exculpatory evidence. *See* Dissenting op. at 354. This testimony had little, if any, bearing on the witness's credibility. The witness provided a plausible explanation for his failure to come forward to the authorities. The eyewitness, Mr. Spain, testified to his extensive opportunity to observe Petitioner at the time of the crime, and he identified Petitioner on the street immediately prior to and at the time of the arrest. The police officer testified to Petitioner's flight. There was no reasonable possibility that this evidence contributed to the guilty verdict.

Whether the failure of an alibi witness to go to the authorities with exculpatory evidence has any probative value has been the subject of many appellate opinions. *See* Annot., *Impeachment of Defense Witness in Criminal Case by Showing Witness' Prior Silence or Failure or Refusal to Testify,* 20 A.L.R.4th 245 (1983). I agree with the observation of the Court of Special Appeals that there are some people who would shout from the rooftops in an effort to exculpate a friend or a relative whom they believe has been wrongfully accused. *Williams v. State,* 99 Md.App. 711, 719, 639 A.2d 180, 184 (1994). As Judge Eldridge notes, however, some would not do so. Dissenting op. at 354. Other appellate courts have also recognized that many citizens might not go to the authorities out of mistrust or fear, or because they feel their efforts would be futile, or because they were instructed not to come forward by the defendant's attorney. *See, e.g., People v. Dawson,* 50 N.Y.2d 311, 428 N.Y.S.2d 914, 920–22, 406 N.E.2d 771, 777–78 (1980). This conflict does not mean, however, that an alibi witness's pre-trial silence may never be the basis for impeachment. *See State v. Silva,* 131 N.J. 438, 621 A.2d 17, 22 (1993) (agreeing with *Dawson* court that although witness's silence may have low probative value, no sound reason exists to flatly prohibit this type of cross-examination). The difficulty is in fashioning an appropriate test.

I cannot subscribe to the evidentiary test crafted by the majority, nor can I find that the test is satisfied by the record in this case. Indeed, under any test, the evidence was not

relevant. The alibi witness hardly knew Petitioner. In fact, when asked how long he had known Petitioner, Mr. Bey testified:

> Well, actually I don't really know him. I seen him a few times. Within a week I seen him about three or four times. First time is when he helped me across the street and every other time I seen him in passing, so I don't know him well.

I agree with Judge Eldridge when he observes that this is hardly the type of relationship warranting the finding of a "natural impulse." Dissenting op. at 355–356. Applying the *Dawson* test, or the majority's test, the cross-examination should not have been permitted. In addition to the lack of a sufficient relationship between the witness and Petitioner, the witness lacked the knowledge of the "reporting" procedure. Moreover, the witness disclosed the information to Petitioner's fiancee, with an offer to testify at trial.[1]

I do not disagree that the nature of the relationship between a defendant and an alibi witness is a key factor in determining whether the witness would have been motivated to contact the authorities to disclose exculpatory evidence. I believe, however, that the additional foundational requirements set forth by the Court of Appeals of New York in *People v. Dawson*, 50 N.Y.2d 311, 428 N.Y.S.2d 914, 921 n. 4, 921–23, 406 N.E.2d 771, 777 n. 4, 778–79 (1980), constitute a better test than that adopted by the majority today. *See also State v. Bryant*, 202 Conn. 676, 523 A.2d 451, 466 (1987); *Commonwealth v. Egerton*, 396 Mass. 499, 487 N.E.2d 481, 486–88 (1986); *State v. Silva*, 131 N.J. 438, 621 A.2d 17, 22 (1993). In *Dawson*, the Court of Appeals observed:

> In most cases, the District Attorney may lay a "proper foundation" for this type of cross-examination by first demonstrating that the witness was aware of the nature of the

---

1. The record reflects the following facts. When asked whether he tried to talk to the police when he came to court, Mr. Bey responded: "I don't understand the procedure." This is not a case of pre-trial silence. Mr. Bey testified that he told Petitioner's fiancee that "she can tell him that he can, you know, use me as a witness."

charges pending against the defendant, had reason to recognize that he possessed exculpatory information, had a reasonable motive for acting to exonerate the defendant and, finally, was familiar with the means to make such information available to law enforcement authorities.

*Dawson,* 428 N.Y.S.2d at 921 n. 4, 406 N.E.2d at 777 n. 4. The *Dawson* test takes into account the notion that there may be explanations about why a witness would not go to the police with exculpatory evidence. The test created by the majority is far too limited. I believe the *Dawson* test will better assist the trier of fact in determining whether the testimony of the alibi witness "is an accurate reflection of the truth or is, instead, a 'recent fabrication.'" *Id.* 428 N.Y.S.2d at 921, 406 N.E.2d at 777.

ELDRIDGE, Judge, dissenting:

Today, this Court holds for the first time that, in a criminal case, an alibi witness's earlier failure to search out law enforcement authorities and relay information that could exonerate a defendant may be used for impeachment purposes. The majority reasons that the "natural impulse" of an alibi witness would be to tell the police or state's attorney office prior to testifying that he or she has information exonerating the defendant, and failure to do so reflects negatively on the witness's credibility. I disagree.

In my view, in large areas of society today, the average citizen's natural impulse may well be to have as little to do with the law enforcement authorities as possible. Consequently, in a criminal case, an alibi witness's credibility ordinarily should not be impugned solely because the witness did not previously contact the police or prosecutor. Furthermore, the majority's holding today improperly burdens the defendant by placing the responsibility on the defense to explain a witness's prior failure to contact law enforcement authorities.

I fully agree with the principle of evidence law that there are circumstances whereby prior silence may amount to an inconsistent statement and thus may be used to impeach the testimony of the witness. I seriously doubt, however, that

such circumstances usually include the earlier failure of an alibi witness, in a criminal prosecution, to have contacted law enforcement authorities and given information about the defendant. In the majority of criminal cases, this failure is sufficiently ambiguous that it lacks significant probative value regarding the credibility of an alibi witness.

In these times, with the vast majority of serious criminal cases involving street crimes, crimes of violence, and drug-related crimes, I question the proposition that there is a natural tendency, by most of the average defendant's acquaintances, to go forward to the police or the prosecutor with exculpatory information. Whether this is because many people are suspicious of government, or is due to a perceived governmental failure to stem the amount of violent and drug-related crime, or is due to abusive or arrogant conduct by a minority of law enforcement officers, or results from a combination of these or other factors, I do not know. Nonetheless, many persons want to have as little to do with the police as possible. That this may be unfortunate does not make it any less of a fact.

The majority adopts the assumption expressed in the leading case of *People v. Dawson*, 50 N.Y.2d 311, 318, 428 N.Y.S.2d 914, 918–19, 406 N.E.2d 771, 775 (1980), where the Court of Appeals of New York stated that "there exists a wide variety of situations in which the natural impulse of a person possessing exculpatory information would be to come forward at the earliest moment in order to forestall the mistaken prosecution of a friend or loved one." In *Dawson*, the impeached alibi witness was the defendant's mother.[1] The New York Court of Appeals, holding that the impeachment of the mother based on her silence prior to trial was appropriate, implicitly recognized that the mother/child relationship is a unique one, involving perhaps the most protective and strong-

---

1. Although, the defendant also called his father and aunt as alibi witnesses, the Court of Appeals of New York held that the defendant did not preserve the issue of whether these witnesses' prior silence could be used to impeach their trial testimony.

est bond between individuals. Thus, the Court assumed that, as a result of this bond, a mother would feel compelled to tell law enforcement authorities of information that would exonerate her son.

The theory applied in the *Dawson* case seems to contemplate a perfect society where, as to every mother/child relationship, a protective impulse exists that would cause a mother to give police and prosecutors information to exonerate her child prior to trial. We do not live in a perfect society, however, as indicated by daily news stories that document the breakdown in family relationships, including mother/child relationships. Moreover, even with respect to strong mother/child relationships, I am dubious about drawing the inference that exculpatory information, if true, would almost always be relayed to the police or to the state's attorney's office.

Moreover, even assuming that we should follow the decision in the *Dawson* case, I would not extend the principle of that case to relationships not as close as the relationship between mother/child. The instant case illustrates the fallacy of extending the principle announced in *Dawson,* under the guise that a "natural impulse" exists, to include relationships that are not among the closest of familial or personal relationships.

The defendant's alibi witness, Mr. Bey, seems to have been, at best, an acquaintance or casual friend of the defendant; there is no indication that he was a relative of the defendant or an extremely close friend. Indeed, from the majority's opinion all that can be discerned about the relationship between Mr. Bey and the defendant is that they knew one another for a certain length of time. This is hardly the type of relationship warranting the finding of a "natural impulse." [2]

---

2. The majority's own recitation of the facts of the instant case counters its assumption that most alibi witnesses would go to the police at some point to convey their exculpatory information. As the majority states (Opinion at 334), "when the victim returned on the second occasion [to the area where the crime occurred], the police were with him and the petitioner and other men on the corner ran away, *as did Mr. Bey.*" If Mr. Bey ran from the police at the time of the incident between the

*Cf. People v. Ratliff,* 189 Cal.App.3d 696, 234 Cal.Rptr. 502 (1987) (defendant's sister and friend); *State v. Bryant,* 202 Conn. 676, 523 A.2d 451 (1987) (defendant's mother, step-father, and friend); *State v. Miller,* 259 Kan. 478, 912 P.2d 722 (1996) (girlfriend and relatives of defendant as alibi witnesses); *Com. v. Brown,* 11 Mass.App.Ct. 288, 416 N.E.2d 218 (1981) (defendant's step-sister and friend); *People v. McClow,* 40 Mich.App. 185, 198 N.W.2d 707 (1972) (defendant's brother); *State v. Silva,* 131 N.J. 438, 621 A.2d 17 (1993) (defendant's sister); *State v. Plowden,* 126 N.J.Super. 228, 313 A.2d 802 (1974) (defendant's sister); *State v. Howard,* 56 Ohio St.2d 328, 383 N.E.2d 912 (1978) (defendant's sister); *Wright v. State,* 531 P.2d 696 (Okla.Crim.App.1975) (defendant's wife); *Glover v. State,* 531 P.2d 689 (Okla.Crim.App.1975) (defendant's wife and aunt); *Commonwealth v. Walloe,* 472 Pa. 473, 372 A.2d 788 (1977) (defendant's sisters).

The majority holds that this nebulous relationship between the defendant and Mr. Bey is all that the prosecution must prove in establishing the foundation for asking why Mr. Bey did not go to the police or to the state's attorney office with his information. This is so despite the majority's initial assertion (Opinion at 340) that, in addition to showing that the witness has a relationship with the defendant, a proper foundation requires evidence that the witness knew that the defendant has been charged with the crime, knew that the information he or she possesses is exculpatory, and knew the procedures for submitting information to the authorities. Although the majority refers to all four factors as "foundational requirements," it ultimately concludes (Opinion at 344–345, emphasis added):

> "Moreover, we believe that the relevance of that pretrial witness's silence must be established as a matter of foundation prior to the proponent of the impeachment evidence being allowed to inquire into it. It is enough of a foundation, however, we believe, if the proponent of the impeach-

---

victim and the defendant, why should it be assumed that he would ever feel compelled to go to the police?

ment evidence establishes a relationship between the witness and the defendant, or circumstances, such as to permit the trial court to conclude that it would have been a natural impulse on the part of the witness to have come forward with the exculpatory evidence. *The extent of the witness's knowledge, the timing of its acquisition, etc. are matters, we hold, of defense or explanation, offerable by the defense . . . ."*

Thus, the majority ultimately places the burden on the defense for explaining how any relationship between the alibi witnesses and the defendant does not warrant an inference of non-credibility from inaction. Once the prosecutor has established that the alibi witness knows the defendant, even tangentially, the prosecution is then free to impeach the witness because the witness did not initially search out the police or the state's attorney. The majority suggests that the witness may be rehabilitated by redirect examination, such as having the witness explain that he or she did not know how to contact the police or the state's attorney office. The majority creates an unfair presumption in favor of the state by requiring only that the prosecutor show that there is a relationship between the defendant and the witness, and, as illustrated today, only that this relationship is that of a mere acquaintance.

In contrast, other jurisdictions following the "natural impulse" theory invoked by the majority do require that the foundational criteria be met before proceeding with the question of whether the alibi witness conveyed his or her information to law enforcement authorities prior to testifying. *See People v. Dawson, supra,* 50 N.Y.2d at 321 n. 4, 428 N.Y.S.2d at 921 n. 4, 406 N.E.2d at 777 n. 4 (the prosecution must establish that "witness was aware of the ... charges ..., recognize[d] that he possessed exculpatory information, had a reasonable motive for acting to exonerate the defendant and.. was familiar with the means to make such information available to law enforcement authorities"). *See also, e.g., People v. Ratliff, supra* 189 Cal.App.3d at 701, 234 Cal.Rptr. at 504–505; *State v. Bryant, supra,* 202 Conn. at 705, 523 A.2d at 466; *State v. Silva, supra,* 131 N.J. at 447–448, 621 A.2d at 22.

The testimony from the trial transcript cited by the majority indicates that not only was the alibi witness in the present case lacking knowledge as to the procedural means to inform the authorities of his information but was prevented from explaining that lack of knowledge. The colloquy between the state's attorney and Mr. Bey, cited by the majority, suggests that Mr. Bey was unaware of the procedure necessary to go to the police. More importantly, the very foundation that is required to be established in most jurisdictions, that the witness knew of the procedure by which to inform law enforcement authorities, was undermined when the prosecution prevented Mr. Bey from explaining his lack of awareness and proceeded to allow the witness only to answer with a yes/no response.

In my view, the trial court erred by permitting the prosecutor to impeach the alibi witness by the testimony that the witness did not "try to talk to the police or the state's attorney's office." Under the circumstances, this had no bearing on the witness's credibility.